SCHWARZ, APPELLANT, *v.* THE GENERAL ELECTRIC REALTY CORP.; THE GENERAL ELECTRIC CO., APPELLEE.

(No. 7886—Decided August 2, 1954.)

*Messrs. Lindhorst & Dreidame* and *Mr. John A. Wiethe,* for appellant.
*Mr. Leo J. Brumleve, Jr.,* for appellee.

HILDEBRANT, J. The trial court directed a verdict for defendant at the close of all the evidence on authority of *Wellman* v. *East Ohio Gas Co.,* 160 Ohio St., 103, 113 N. E. (2d), 629. In this appeal on questions of law from the judgment entered thereon, appellant states the basic question considered by the trial court was whether the case of *Bosjnak* v. *Superior Sheet Steel Co.,* 145 Ohio St., 538, 62 N. E. (2d), 305, or the *Wellman case* applied.

Plaintiff was injured while on the extensive industrial premises of defendant in the capacity of an iron worker, employed by the Duffy Construction Corporation, an independent contractor with the defendant for the construction of several buildings thereon.

The northeast corner area of defendant's acreage industrial premises is enclosed on the north and east by a high chain link fence, just inside of which along the east line, extending southwardly, and upon high poles, runs a three-wire high tension line, some 36 feet above the ground, supplying power for defendant's industry.

Signs warning of the high tension line were placed on either side of the power substation, some distance away from the scene of the accident, but there were no signs on the poles at or near the site of unloading on April 2, 1952, although there is testimony in the record that similar signs had been originally so located.

On December 27, 1951, defendant, through its resident engineer, wrote the Duffy Construction Corporation, to the attention of T. F. Keller, its project manager on the job, the following letter:

"December 27, 1951

"Duffy Construction Corporation
"Lockland, Ohio
"Attention: Mr. T. F. Keller
"Dear Mr. Keller:

"Please be advised that effective 5:00 p. m. on December 27 the 66 KV overhead line feeding the main substation north of Jimson Road is energized. Any interferences with this line by equipment must be avoided.

"Yours very truly,
"P. B. Unthank
"Resident Engineer."

. Keller testified that he passed the information along to the proper Duffy employees, four in number, by memorandum, including superintendent Benes and the master mechanic in charge of hoisting equipment for the Duffy Corporation. There is no claim that the high tension line was in any manner defectively constructed or maintained, or that it was in a defective condition on April 2, 1952; and it is clear that the prompt warning against interference with the energized line by equipment applied to large equipment, such as a crane, which was capable of interference.

Plaintiff testified that he had not been on this particular northeast corner area of the premises upon which he was employed prior to the morning of April 2, 1952, and that he did not observe any part of the high tension line, either poles or wires at the time. This testimony is well nigh incredible, particularly in view of the testimony in the record of other Duffy employees that the hazard of working with heavy and large equipment such as a crane in proximity to high tension wires was common to the construction business of all concerns erecting buildings and structures on industrial premises, such as the Duffy Corporation was employed to do in this instance.

Defendant's manufacturing spur railroad tracks enter the premises at the extreme northeast corner and follow a curving southwestwardly course into the premises.

On April 2, 1952, the Duffy Construction Corporation was engaged in unloading a gondola car of steel beams, 36 inches by 38.7 feet, by means of a crane with a 45 foot boom, with cable attached, swinging the beams from the car to the south and conveying them to the east for placement on timbered dunnage, directly under the high tension power line, previously prepared by the Duffy Construction Corporation.

Plaintiff was assisting two fellow workmen guide the beams into place on the dunnage when he was injured and they were killed by electric shock occasioned by the steel cables of the crane being swung in too close proximity to the high tension wires.

Defendant checked the progress of the construction according to specifications through a resident engineer in the field in contact with the Duffy Corporation. It is clear from the record that the resident engineer designated the spot where the steel beams were to be unloaded, and that the Duffy Construction Corporation leveled off and prepared the site.

At the close of the work day on April 1, 1952, one Roberts, foreman, and Benes, superintendent, for the Duffy Corporation, had a conversation in the field office with the resident engineer in the presence of another Duffy employee, Sauer, during which the Duffy employees protested the selection of the unloading site as too dangerous, due to the proximity of the high tension line to the crane. The resident engineer refused

to change the designation and the next morning the Duffy construction employees proceeded with the work, without any supervision or interference on the part of the defendant.

Upon this state of the record, was the trial court correct in directing a verdict on authority of the *Wellman case?*

The first paragraph of the syllabus in *Bosjnak* v. *Superior Sheet Steel Co., supra,* is:

"An employee of an independent contractor, while engaged in the erection of a building upon premises, the possession and control of which are retained by the owner, is an invitee to whom the owner owes the duty of exercising ordinary care to maintain the premises in a reasonably safe condition for use in a manner consistent with the invitation, and to inform the invitee of hazardous conditions of the premises and of activities thereon unknown by and not obvious to the invitee."

At page 542, it is stated:

"Concededly the plaintiff, at the time of his injury, was on the premises of the defendant as an employee of a contractor then engaged in the erection of a building for the defendant. He was, therefore, an invitee of the defendant who accordingly owed him the duty 'to exercise ordinary care to have the premises in a reasonably safe condition for use in a manner consistent with the purpose of the invitation.'

"The owner has the further duty of exercising reasonable care to inform the invitee of hazardous conditions of the premises and of activities thereon unknown by and not obvious to the invitee. Such duty, however, has reference only to the owner's plant and premises, and not to the contractor's equipment. 2 Shearman & Redfield on Negligence (Rev. Ed.), 688, Section 279; 38 American Jurisprudence, 754, Section 96; Prosser on Torts, 635; 29 Ohio Jurisprudence, 465, Section 61."

At page 543, the court quotes from 2 Shearman & Redfield on Negligence (Rev. Ed.), 688, Section 279, which states the rule thus:

" 'The law requiring an owner to keep the place reasonably safe for a contractor and his subcontractors does not apply where the work itself is of an unsafe nature or the defects are due to the imperfect and negligent work of the contractor himself.' "

In *Davis* v. *Charles Shutrump & Sons Co.*, 140 Ohio St., 89, 42 N. E. (2d), 663, the first paragraph of the syllabus is:

"Where the premises upon which constrtuction work is to be performed by a contractor remains under the control of the principal employer while the work is in the course of performance, a servant of the contractor is an invitee and as such entitled to recover from the principal employer for any injury which he may sustain by reason of abnormally dangerous condition of the premises, only if the principal employer has, and the servant has not, actual or constructive notice of the existence of such condition."

Again, the following significant statement on the facts appears on page 545 of the court's opinion in the *Bosjnak case*:

"There is evidence indicating that it was this change of condition inside the building which made subsequent operation of the crane outside the building necessary; that this necessity and the reason therefor were known by the defendant; and that the chief engineer of the defendant, who had supervision of all departments of the plant, was present and saw the truck crane when it started to back up *toward the power line immediately preceding plaintiff's injury. In this connection it should be observed that the premises of the defendant remained under its control, and that it actively participated in the operations* incident to and in connection with the erection of its building." (Emphasis added.)

In an extensive annotation in 44 A. L. R., at page 982, under the heading: "Liability of contractee with respect to injuries resulting from the dangerous condition of his premises," Section 17, it is stated:

"The ratio decidendi in numerous cases is a doctrine which may be formulated thus: Where the premises on which the stipulated work is executed remain under the control of the principal employer while the contract is in course of performance, a servant of the contractor is in the position of an invitee, and as such entitled to recover for any injury which he may sustain by reason of the abnormally dangerous condition of the premises or plant thereon, if the evidence shows that the principal employer was, and the servant was not, chargeable with knowledge, actual or constructive, of the existence of that condition."

The leading authority with regard to this doctrine in both England and the United States is stated to be *Indemaur* v. *Dames* (1866), L. R. 1 C. P., 274, 19 Eng. Rul. Cas., 64 (not involving an independent contractor). In the opinion, Willes, J., stated, at page 288:

"It was ably insisted for the defendant that he could only be bound to keep his place of business in the same condition as other places of business of the like kind, according to the best known mode of construction. And this argument seems conclusive to prove that there was no absolute duty to prevent danger, but only a duty to make the place as little dangerous as such a place could reasonably be, having regard to the. contrivances necessarily used in carrying on the business."

In the annotation contained in 23 A. L. R., 1009, Section 11, pointing out the nondelegable quality of the duty of a person in possession of land or other fixed property to take reasonable care to keep the premises in such a state as not to unduly expose an invitee to danger, at page 1011, it is stated:

"The applicability of this doctrine is, of course, negatived, if the evidence shows either that the injured person had not been authorized by the employer to enter upon the premises in question, or that at the time of the accident the contractor was temporarily in possession of the premises as a whole, or of the particular portion of them upon which the injury was received, and that the dangerous conditions from which the injury resulted were attributable solely to his negligence."

In 27 American Jurisprudence, 504, Section 27, it is pointed out that the general rule of nonliability of an employer for the torts of an independent contractor or the latter's servants, which Ohio recognizes, is based upon the incident of the relation created by contract, whereby the employer loses possession of the power of control over the work, so that it follows as a necessary judicial consequence that the employer is not answerable for the manner in which the work is performed. By way of analogy, we call attention to the statements in the syllabus and opinion of the *Bosjnak case*, together with those contained in the other citatious quoted, *supra*, which indicate that the basis of the duty attributed to the owner of the premises toward an invitee to protect and warn against the dangerous

condition thereof is traceable to the retention of possession and control on the part of the owner.

In this connection, we call particular attention to the emphasized last sentence of the quotation from the *Bosjnak case* at page 545.

We recognize the nondelegable quality of the duty resting upon an owner of premises toward an invitee with respect to the condition thereof. For example, had some third person come upon the premises to repair the fence and, without precaution or warning on the part of the defendant, been injured by means of the high tension line, liability would attach. Or, if conceivably, plaintiff were injured by the existence of some sort of trap or hole at the working site, known to defendant, and about which plaintiff had neither actual nor constructive knowledge, the duty toward an invitee should be enforced.

In the instant case, however, plaintiff was upon the premises not only as an invitee of defendant, but in his additional capacity as employee of the Duffy Construction Corporation, which, on this particular morning, was in the exclusive possession and control of that extreme northeast corner of defendant's property and assumed to perform work incident to its contractual status there; and it not only invited plaintiff to that area, but required him to be there and commanded and controlled him in the performance of his work. While defendant designated the unloading site, it was the Duffy Corporation which undertook the unloading, knowing and appreciating the existence of a real or potential danger in the operation of its crane in proximity to the high tension line during the unloading process, not otherwise subject to such a hazard.

By the very nature of the work of operating the crane within such proximity to the high tension line, the Duffy Corporation was aware of the potential danger of too close contact. As stated in the *Wellman case* at page 107—in these circumstances it was the Duffy Corporation's duty to warn and protect the plaintiff and no such duty devolved upon the defendant.

The first and second paragraphs of the syllabus in *Wellman* v. *East Ohio Gas Co., supra,* are:

"Where an independent contractor undertakes to do work

for another in the very doing of which there are elements of real or potential danger and one of such contractor's employees is injured as an incident to the performance of the work, no liability for such injury ordinarily attaches to the one who engaged the services of the independent contractor.

"One who engages an independent contractor to do work for him ordinarily owes no duty of protection to the employees of such contractor, in connection with the execution of the work, who proceeds therewith knowing and appreciating that there is a condition of danger surrounding its performance."

Since it is clear the Duffy Corporation knew and appreciated the danger surrounding the performance of its unloading operation by means of a crane in close proximity to the high tension line, we believe the court was correct in basing its action on authority of the *Wellman case.*

Supporting this conclusion, we cite 57 Corpus Juris Secundum, 378, Section 606:

"However, except where the contractee has assumed the duty of giving warning or otherwise affording protection, the foregoing is true only in respect of latent dangers of which the servant of the contractor or subcontractor did not know and could not reasonably have discovered and of which the contractees knew or should have known. The contractee performs his duty by giving due notice or warning, and, except for hidden defects, he is not required to alter the premises to make them safe for employees of a contractor or subcontractor."

In note 83 is cited *Cleveland Electric Ill. Co.* v. *O'Connor,* 50 Ohio App., 30, 197 N. E., 428, and the case of *Valles* v. *Peoples-Pittsburgh Trust Co.,* 339 Pa., 33, 13 A. (2d), 19, which seems directly in point. Paragraph seven of the headnotes of that case is:

"Where contractor was informed that pipes near wall which he contracted to repair contained ammonia and subcontractor's employees working near the pipes were injured when a pipe broke, building owner was not liable for the injuries resulting to subcontractor's employees, since its duty was performed when it gave notice to contractor and it had no duty to foresee that contractor would not perform his duty to give

warning to subcontractor and permit work to be done improperly.''

In *Union Tank & Supply Co.* v. *Kelley* (C. C. A. 5, 1948), 167 F. (2d), 811, it was held in the second paragraph of the headnotes:

''Independent contractor which had contracted to unload car of steel for defendant, rather than the defendant, had duty to warn employee of dangers of working with steel at night and to furnish him with adequate lighting, and hence where employee sued defendant for injuries, charging issues of failure to warn and to furnish adequate lighting was error.''

We find no error in the record, prejudicial to the appellant, and the judgment is affirmed.

*Judgment affirmed.*

MATTHEWS, P. J., concurs.

Ross, J., dissenting. The trial court granted a motion of the defendant for an instructed verdict made at the conclusion of all the evidence. The effect of such a motion is a demurrer to the evidence. The plaintiff, when such motion is made by defendant, is entitled to the benefit of all the evidence in his favor, whether introduced by him or the defendant. He is entitled to all the favorable, fair and reasonable inferences justified by such evidence, and the trial court and this court may not sustain such instructed verdict unless reasonable minds could not differ as to the conclusions to be drawn therefrom.

In differing with the conclusion of the trial judge and the conclusions of my associates, I am conscious of the implications involved in the situation.

At the outset, I think it is proper to endeavor to establish the law as it exists in Ohio, particularly in view of the decisions of *Bosjnak* v. *Superior Sheet Steel Co.*, 145 Ohio St., 538, 62 N. E. (2d), 305, and *Wellman* v. *East Ohio Gas Co.*, 160 Ohio St., 103, 113 N. E. (2d), 629.

The earlier case would be almost a ''blue bottle'' case as far as the instant case is concerned, except for the fact that in the *Bosjnak case* there was no evidence that the contractor had been notified of the danger inherent in the charged wires. In this case, the contractor was so notified.

The *Wellman case* presents an entirely different situation than that involved here. In that case, the contractor was employed to work upon the very agency which caused injury.

If the contractor in the instant case had been employed to do something in connection with the poles or wires, such as moving the poles or adjusting contact with the charged wires, then the *Wellman case* would have applied. A reading of the syllabus and opinion in the *Wellman case* makes it clear that the rule of responsibility is changed where the employee-invitee is working upon the very instrumentality which causes his injury, but the owner is not relieved from responsibility where the destructive agency is not connected with the specific work allocated to the contractor. The employee-invitee must be presumed to assume all the risks incident to such specific employment when that employment involves dealing with the agency causing the injury.

It is clear, therefore, that, except under such circumstances, the owner owes a nondelegable duty to the invitee-employee of the contractor to warn him of latent dangers incident to his employment on the premises of the owner.

Now it appears from the evidence that the plaintiff had been working in and about the extensive premises of the owner for some time, and that during a portion of this period, the bare electric wires were not charged with electricity. The injury to plaintiff occurred on April 2, 1952. On the previous December 27, 1951, the contractor was notified by the owner that the wires had been energized. The evidence is that the contractor notified, by letter, the master mechanic in charge of the hoisting equipment of the contractor, a mechanical engineer, an electrical engineer, and a sub-contractor of the contractor. There is no evidence that the plaintiff had the slightest knowledge that the wires were energized with some 66,000 volts of electricity. In the majority opinion it is stated that "it is well nigh incredible" that the plaintiff did not observe the poles and wires. It certainly seems incredible that the plaintiff would take hold of a steel beam, attached by steel wires to the boom of a crane, moving toward bare wires which he knew carried 66,000 volts of electricity.

It appears from the evidence that the plaintiff on the

morning of the day on which his injury was incurred, reported at a place somewhat distant from the scene of activity where the beams were to be unloaded from the gondola car by the contractor, that before repairing to such location, he was sent off to obtain some "spreaders" and spent some considerable time in securing them, that finally when he reported with them to the scene of activity, the work of swinging the beams from the car had progressed, so that a beam was already to be swung out of the car, that he was told immediately to assist in swinging the beam to its place on the ground, and that he had little, if any, opportunity to observe the elements of danger present, even if he had known that the wires were energized. In any event, whether he was guilty of contributory negligence or had assumed the risk would be a question for the trier of fact.

Now it is also apparent, giving the plaintiff the benefit of disputed evidence, that the contractor, over the objection of his responsibile employees, had been definitely instructed by authorized agents of the owner to unload the beams in this area of latent danger. Here, again, is a situation presenting an issuable fact as to whether the owner did not assume full responsibility for the consequences of such instruction.

Again, it is in evidence that signs were posted some distance from the area of activity calling attention to the energized wires. Whether such signs were so placed as to constitute possible notice to the plaintiff is an issuable fact.

It is stated that the evidence shows that complete control over the area in which the plaintiff was acting had been given the contractor. Examination of the record will show that this also was an issuable fact, or that it constitutes an interpretation of evidence most unfavorable to the plaintiff.

To sustain the conclusion of the trial court, it is necessary to find as a matter of law that the defendant-owner had discharged its full duty to the plaintiff-invitee-employee of the contractor when the owner notified such contractor that the wires were energized, even though such information never reached the plaintiff-employee-invitee, or that the posted notices were, as a matter of law, sufficient notice to such employee, or that full and absolute control of the premises involved had been given the contractor. Even if such conclusions did not in-

volve issuable facts, no authoritative Ohio case sustains the legal conclusions involved.

It is asserted also that the difficulty in giving notice to all the invitee-employees of an independent contractor should release the owner from such duty. It has never been held that difficulty in performance will relieve one responsible from the performance of a lawful duty. Certainly, a different situation would be involved in the instant case had the poles in the immediate vicinity of the area of the activity carried signs warning of the presence of bare wires carrying a high voltage current of electricity.

Decisions of courts of other states are in conflict upon these questions, although in each case the facts vary. Illustrative of this conflict are the following cases: The case of *Valles* v. *Peoples-Pittsburgh Trust Co.,* 339 Pa., 33, 13 A. (2d), 19, sustains exclusion of liability of the owner where notice is given the contractor; the case of *Le Vonas* v. *Acme Paper Board Co.,* 184 Md., 16, 20, 40 A. (2d), 43, is to the contrary.

To sustain such rule in Ohio, a modification of the unqualified rule stated in the case of *Bosjnak* v. *Superior Sheet Steel Co., supra,* will be required.

As stated before, the case of *Wellman* v. *East Ohio Gas Co., supra,* by reason of the facts and rule stated, does not constitute such modification. Until such modification of the rule in *Bosjnak* v. *Superior Sheet Steel Co., supra,* is announced by the Supreme Court, I consider that issuable facts in the instant case were presented requiring the intervention of the trier of facts. I consider the better rule to be that if the owner sees fit to use the independent contractor as his agent to notify the employee-invitees of latent dangers, and such agent fails in the performance of such duty, the owner may not escape responsibility for failure to perform a nondelegable duty.

I think the judgment should be reversed and the cause remanded to the trial court for new trial.