NANCE EXPLORATION COMPANY,
Appellant,

v.

TEXAS EMPLOYERS' INSURANCE ASSO-
CIATION et al., Appellees.

No. 5226.

Court of Civil Appeals of Texas.

El Paso.

July 31, 1957.

Rehearing Denied Oct. 2, 1957.

**622**

Stephen F. Preslar, Rankin, Raymond A. Lynch, Turpin, Kerr & Smith, Midland, for appellant.

Forrest Bowers, Huff & Splawn, Lubbock, for appellees.

Edwin T. Stitt, Sisterville, W. Va., for intervenor.

WILLIAMS, Justice.

The nature of this case is succinctly stated by the appellee, as follows:

"This is what is commonly designated as a third party suit instituted by appellee David Lee Flowers against Nance Exploration Company, West Texas Utilities Company and Gulf Oil Corporation in the 83rd District Court of Upton County, Texas. Texas Employers' Insurance Association intervened to recoup the amount of money paid by it to David Lee Flowers pursuant to the policy of Workmen's Compensation Insurance issued to D. A. Peachee Drilling Company, appellee's employer at the time of the accident.

"D. A. Peachee Drilling Company, appellee's employer, had entered into a contract with appellant to do certain seismograph work in and around Upton County, Texas, for and on behalf of Gulf Oil Corporation. While engaged in such work the mast on the drilling rig operated by D. A. Peachee Drilling Company came into contact with an electric power line carrying 66,000 volts of electricity causing injuries to the plaintiff resulting in amputation of both legs below the knee as well as almost complete loss of use of his right arm. After all parties had closed, the trial court instructed a verdict in favor of Gulf Oil Corporation and West Texas Utilities Company and submitted the case to the jury as against Nance Exploration Company alone.

"Based upon favorable answers to the issues as submitted to the jury the trial court entered judgment for David Lee Flowers in the sum of $127,671.11 and in favor of the intervenor, Texas Employers' Insurance Association in the sum of $15,879.89, plus interest and costs and $1500.00 attorneys fees for the intervenor. From such judgment Nance Exploration Company has appealed."

The record in this case is quite voluminous, consisting of some 800 pages, and there are approximately 200 typewritten pages of briefs filed by each party. Appellant sets up 39 points of error.

Since we are to hold that several facts are established as a matter of law, it is necessary that we give a rather full summation of the evidence. This we take from appellant's Statement of Facts, to which appellee concurred.

The accident happened on land owned by the University of Texas. West Texas Utilities Company owned a right of way granted by the University for the construction and maintenance of a 66,000 volt H-frame electric transmission line, which land was under an oil and gas lease from the University to Gulf Oil Corporation. Gulf Oil Corporation entered into a contract with appellant, a seismograph exploration company, whereby appellant agreed to conduct seismograph surveys for Gulf. Appellant, Nance Exploration Company, in turn contracted with D. A. Peachee Drilling Company for the drilling of the pattern shot holes. Appellee was employed by Peachee Drilling Company as a driller's helper. It therefore seems that appellant stood in the position of the general contractor, and Peachee Drilling Company, as a sub-contractor, and it likewise seems quite clear that each operated as an independent contractor. Neither supervised the work of the other. Appellant's surveyor located where the holes should be drilled, and Peachee Drilling Company agreed to drill them. Some of the holes were on the north side of the fence line, and some on the south side. The power line was of standard H-frame construction, each H-frame consisting of two high poles with cross braces, and with three heavy, uninsulated wires fourteen feet apart. Peachee Drilling Company's crew consisted of a Mr. Bailey, who was overseer or foreman, Mr. Greer, who was the driller, and appellee, Flowers, who was the driller's helper. After they had drilled eight holes on the north side of the fence, the drilling truck, which consisted of a regular truck with a 35-foot mast, was moved to the south side of the fence, and in order to make this move, the mast was lowered so that the truck could be driven under the highline. Appellee drove the truck in this operation and, after seven holes had been drilled on the south side, he drove the truck to the eighth and last south side hole. In moving from hole to hole, the mast was left up, but to go under the highline, it had to be lowered, as it extended 35 feet into the air when up, and the power line was not this high from the ground. Appellee testified that as he drove the truck up to the last hole, Greer was directing him and was looking up at the power line, and that he himself opened his cab door and looked up at the power line. He further testified that he knew it was a high power line, and knew that it was more powerful than the wires you see around town. He also testified that there was nothing to keep him from seeing the line; that he noticed the highlines when he arrived at the location; that he realized they were high power lines; that he realized that before the accident; that the wire didn't look like it had rubber wrapped around it. He also testified that said wire was slightly larger than a fountain pen. It is undisputed that even this last, the sixteenth hole, was drilled without incident, and appellee testified in this connection:

"A. 'Yes, the mast, he was going to let it down like that (indicating) and when he did, why it hit the highline.'

"Q. I said, 'Now, actually, if he hadn't of let that mast down, you would have gotten in the truck, backed off and never had any trouble?', and what did you say? A. 'That's right.' * * *"

"A. 'I was putting it in the hole and the driller was letting down the mast.'

"Q. 'I see. Now, the driller there, standing beside you, let the —', and what did you say? A. 'The mast down.'

"Q. And, I asked you: '— was letting the mast down? And, when he did, the mast —', and what did you say? A. 'Hit the highline and that's what happened.'"

In another place appellee testified that the only way the accident could have happened was for his helper, Greer, to have let the mast down into the wire.

On the question of notice, or obviousness of the danger, Bailey testified that while Greer was drilling the first hole, he and appellee walked out to the power line, and that he, Bailey, told Flowers that they could not pull forward on those holes, but would have to back up, because the highline was too close; that they would have to be careful not to go over the shot point; and that they talked about the highline, and he cautioned appellee. He further testified that he cautioned Greer, and told them they would have to back away from the power line before they could fold the mast. Appellee denied receiving this warning, but it is undisputed that Bailey, the foreman, realized the danger; and that he told Greer of it. It is likewise undisputed that Bailey, Greer and appellee all worked for Peachee Drilling Company, Bailey being the foreman, Greer the driller, and appellee the driller's helper.

At the close of the evidence, the appellant presented a motion for instructed verdict, setting up all the defenses now urged. He likewise duly objected to the negligence issues on the grounds of no evidence of breach of duty, and no evidence of negligence, but all such objections were overruled:

"In response to special issues submitted by the court, the jury found that this appellant was negligent in failing to provide Flowers a safe place to work (S.I. Nos. 1 and 2), in ordering, instructing or requiring Flowers to work near an electric power line carrying high voltage electricity (S.I. Nos. 4 and 5), in failing to warn Flowers that he was being required to work in an intrinsically and inherently dangerous place (S.I. Nos. 7 and 8), in locating the place where the hole was to be drilled where Flowers was injured (S.I. No. 10), in ordering, instructing or requiring Flowers to work in an intrinsically and inherently dangerous place (S.I. Nos. 12 and 13), in failing to request West Texas Utilities Company to stop the flow of electricity through the electric power lines (S.I. Nos. 15 and 16), and in failing to warn Flowers that they had failed to request West Texas Utilities Company to stop the flow of electricity through the electric power lines (S.I. Nos. 18 and 19)."

After return of the verdict, appellant filed its motion to disregard the above findings on the grounds of no evidence and no duty, and also filed its motion for judgment n. o. v., setting out the points of error now urged. Though duly presented, both motions were overruled by the trial court. All of the foregoing rulings of the court were assigned as error in appellant's motion for new trial.

Under the undisputed evidence in this case, including appellee's testimony, we conclude, as a matter of law: (1) that the danger inherent in this high power electric line was open and obvious; (2) that appellee knew of and realized the danger; (3) that as a matter of law he was charged with the danger, whether he realized it or not.

The law of Texas seems to be well settled in this regard by the Supreme Court in Robert E. McKee, General Contractor v. Patterson, 1954, 153 Tex. 517, 271 S.W.2d 391, 393, wherein it is said:

"There are certain qualifications not there expressed. It is now well established in this state that the duty as there expressed does not extend to those invitees who know or should know of the existence of the particular condition and who appreciate or should appreciate its dangers. Hall v. Medical Bldg. of Houston, 151 Tex. 425, 251 S.W.2d 497; A. C. Burton Co., Inc., v. Stasny, Tex.Civ.App., 223 S.W.2d 310, writ refused; Houston National Bank v. Adair, 146 Tex. 387, 207 S.W.2d 374; Hausman Packing Co. v. Badwey, Tex.Civ.App., 147 S.W.2d 856, writ refused; Marshall v. San Jacinto Bldg., Tex.Civ.App., 67 S.W.2d 372, writ refused. What the qualification means, of course, is that inasmuch as the invitee has knowledge of the dangers there is no duty on the owner to warn him of them. It means also that if, having knowledge of the dangers, the invitee exposes himself to them he must take the premises as he finds them and there is no duty on the owner to protect him even by the use of reasonable precautions to eliminate the hazards."

It further says:

"In determining liability, under the defense of voluntary exposure to risk, it is said that one cannot recover for injuries sustained while voluntarily exposing himself to a danger which he either does or should fully realize and appreciate. 38 Am.Jur. 845 et seq., Negligence, Secs. 171–173; 65 C.J.S. Negligence § 174, p. 848; Levlon v. Dallas Ry. & Terminal Co., Tex.Civ.App., 117 S.W.2d 876, writ refused; Wood v. Kane Boiler Works, 150 Tex. 191, 238 S.W.2d 172,

174; Schiller v. Rice, 151 Tex. 116, 246 S.W.2d 607, 610."

Another excerpt is:

"In this case we may say without any doubt that the defendant through its superintendent knew of the slick condition of the floor."

This case was rather recently followed by the Fifth Circuit Court of Appeals at New Orleans, in Phillips Petroleum Co. v. Gibson, 1956, 232 F.2d 13, 19. In that case it is said:

"The qualification, above noted, to the general rule of duty to use ordinary care to protect invitees from injuries resulting from unsafe condition, exists only when the invitee, confronted with the existence of a condition of which he knows and containing dangers which he appreciates, voluntarily encounters them. We hold that Gibson here made such a choice, voluntarily encountering the danger, and consequently, under Texas law, appellant breached no duty to him."

True it is that the Supreme Court of the United States, in a very recent per curiam opinion (352 U.S. 874, 77 S.Ct. 16, 1 L.Ed.2d 77), without giving any rhyme or reason for its action, set aside the holding of the Circuit Court in this case. Appellee relies strongly on this action and insists that the United States Supreme Court has "thereby struck down the doctrine in the McKee case." We disagree. It is impossible to determine from the Supreme Court opinion why it took this action. It cannot be determined if it thought the Texas law was wrong, or if it thought that the Fifth Circuit had wrongly applied it. Be that as it may, we are not bound by Federal decisions in this case. On the contrary, Federal courts are supposed to follow State decisions. Gibson case, supra, 352 U.S. at page 874, 77 S.Ct. at page 16, 1 L.Ed.2d at page 78. We consider the Fifth Circuit opinion well reasoned and in accord with the Texas decisions, by

which we are governed. Federal cases are used by us as persuasive, but not decisive. In this case, we choose to cite with approval the Fifth Circuit's opinion.

Very recently this court, in Oaxaca v. Lowman, Tex.Civ.App., El Paso, 1956, 297 S.W.2d 729, held, in a situation very similar to this one and for reasons similar to those in this case, that the employer was not liable. The Supreme Court has just recently refused a writ of error (n. r. e.) in that case, thereby re-affirming the holding in the Patterson and Gibson cases, supra. See also Sears, Roebuck & Co. v. Robinson, 1955, 154 Tex. 336, 280 S.W.2d 238; McElhenny v. Thielepape, Tex.1956, 285 S.W.2d 940; Gulf Oil Corp. v. Wright, 5 Cir., 1956, 236 F.2d 46; Moore v. Texas Co., Tex.Civ.App., El Paso, 1956, 299 S.W. 2d 401.

■ As above stated, the appellee denied that he had received a direct warning of the danger of the electric wire and, in one place, even testified that he did not know it was carrying electricity. He did not know but what it was a telephone line. We think his argument that he was entitled to receive affirmative warning in a situation such as presented here, is without merit. In Union Tank & Supply Co. v. Kelley, 5 Cir., 1948, 167 F.2d 811, 813, Judge Hutcheson, speaking for the court, said:

"He, therefore, saw and knew everything that could have been told to him, that if the sheets were straightened up and swung over toward the north wall of the car, their weight, configuration, and size were such that if unsupported they would be bound to fall. There is nothing then in the work he was doing and the situation under which he was doing it which was not as fully known to him as to Head, nothing in the work that was inherently dangerous if it was done with reasonable care for the safety of the worker."

We think that statement could be made with equal appropriateness here. It is unthinkable that an experienced driller, such as the appellee, could see this big H-power line, running overhead, uninsulated, with wires as large as a fountain pen, and not realize that it would be instant death to touch one. It would be just as logical for him to say that he did not realize that a red-hot depot stove would burn him if he were to pick it up. Therefore, we hold that the appellee knew, or should have known, of the danger here, and therefore was not entitled to any warning, nor was he entitled to assume the lack of danger: Cloud v. Houston Lighting & Power Co., Tex.Civ.App., Galveston, 1947, 199 S.W. 2d 260, err. ref. n. r. e.; West Texas Utilities Co. v. Dunlap, Tex.Civ.App., Eastland, 175 S.W.2d 749, no writ noted; McGinty v. Texas Power & Light Co., Tex.Civ.App., Dallas, 1934, 71 S.W.2d 354, err. ref.

Furthermore, if appellee was entitled to a warning of the danger, he had received that warning because his superior, Bailey, under the undisputed evidence, knew of said danger and, under the undisputed evidence, had warned Greer of the danger. Therefore, both of appellee's superiors knew of the danger, and, under the last quotation from McKee v. Patterson, supra, that amounted to knowledge of the danger on the part of appellee. See also: Texas Electric Service Co. v. Holt, Tex. Civ.App., Ft. Worth, 1952, 249 S.W.2d 662, err. ref. n. r. e.

■ True it is that the owner, or occupier of land owes the duty of ordinary care to the employees of its independent contractor, and virtually all of the cases cited in this opinion are to the effect that a general contractor, when in possession *and control of premises*, owes the duty to warn its independent contractor's employees of any *hidden* danger. However, we hold in this case that there was no duty on the part of the appellant to warn the appellee, because the appellant was not the owner nor occupier of the prem-

ises. He was an independent contractor under Gulf. Peachee Drilling Company was an independent contractor under appellant. Therefore, each was an invitee on the premises, but appellant had no more control over the premises than did Peachee Drilling Company. It was not the owner or occupier in control of the premises, and had no possession of or control over the land. It was merely an invitee, as was the Peachee Drilling Company. All of the authorities we have found holding the general contractor liable under such circumstances are those where the general contractor was in possession and control of the premises and created the danger, or was in control of it: 65 C.J.S. Negligence § 94, p. 609.

The two cases, Smith v. Henger, 1950, 148 Tex. 456, 226 S.W.2d 425, 20 A.L.R.2d 853, and Galveston-Houston Electric Ry. Co. v. Reinle, 1924, 113 Tex. 456, 258 S.W. 803, largely relied on by appellee, reflect this situation. In fact, all the cases cited in this opinion are of this nature. The McKee case, supra, recognizes the requirements of control or no duty. See also: Gulf Oil Corp. v. Wright, 5 Cir., 1956, 236 F.2d 46, at page 57.

Certainly appellant was not in control of the highline, which was the danger element. It had no more right to ask the electric company to cut off the power, as appellee insists it should have done, than did Peachee Drilling Company or the appellee, himself, and it certainly had no duty to do so.

We therefore hold that appellant owed no duty to appellee to warn him of the danger, even though same could be considered a hidden danger, or to protect him otherwise. In the Union Tank Co. case, supra, Judge Hutcheson says, when speaking on this subject:

> "We agree, too, that under the undisputed facts, the duty was on plaintiff's employer and not on the defendant to warn plaintiff of the dangers of working with steel at night and to furnish him with adequate lighting and that if there was any negligence in the discharge of this duty, it was the negligence not of defendant but of Wimberley, plaintiff's employer, and it was error for the court to charge these issues to the jury."

In that case Judge Hutcheson further held that, for the above reason, the general contractor was under no duty to furnish lights, even though the work was being done at night. He held that if lights were necessary, it was the place and duty of the plaintiff's employer to furnish them, and not the general contractor's.

Furthermore, this was not intrinsically dangerous work, nor was the place to work intrinsically dangerous. It only became dangerous by the manner in which the work was performed: Texas Electric Service Co. v. Holt, supra; Humble Oil & Refining Co. v. Bell, Tex.Civ.App., El Paso, 1943, 180 S.W.2d 970, err. ref., 142 Tex. 645, 181 S.W.2d 569; West Texas Utilities Co. v. Harris, Tex.Civ.App., Eastland, 1950, 231 S.W.2d 558, err. ref. n. r. e.

The fact that the hole was drilled and the work completed without incident is positive proof that the work was not, within itself, dangerous. True it is that working with electricity, or highlines, is intrinsically dangerous, but this work did not entail the working with or use of electric lines. All that was required of the workmen was to use the slightest degree of care not to come in contact with the line. Therefore, we hold that the danger arose from the manner in which the work was performed, and that the danger was transitory, and, therefore, the appellant is not liable. Very similar and very persuasive is Schwarz v. General Electric Realty Corp., 1954, 99 Ohio App. 191, 132 N.E.2d 133, affirmed 1955, 163 Ohio St. 354, 126 N.E.2d 906. Furthermore, the doctrine of liability for inherently dangerous work is not involved in this case. It is well settled that an employee of an independent contractor is not

a "third person" within the rule that an employer of an independent contractor is liable to third persons for the negligence of the independent contractor in the performance of work that is inherently dangerous: Humble Oil & Refining Co. v. Bell, Tex.Civ.App., El Paso, 1943, 180 S.W.2d 970, writ of error refused, 1944, 142 Tex. 645, 181 S.W.2d 569; Cagle v. McQueen, 5 Cir., 1953, 200 F.2d 186.

There is no special rule which would create a greater duty to appellee because the work in which he was engaged or the place where he was working was "intrinsically" or "inherently" dangerous. On the contrary, such findings tend to negative any duty that might otherwise exist, in that such dangers would be more obvious, and both appellee and D. A. Peachee Drilling Company would be charged with knowledge thereof.

We thoroughly sympathize with the plight of the appellee, as the jury evidently did, but a careful reading of the record as a whole, and especially appellee's testimony, leads to the inevitable conclusion that Greer evidently forgot about the highline, temporarily, and lowered the mast into it, when such action was not necessary at all. Appellee himself testified that had not Greer committed this act of extreme negligence, he (appellee) would have gotten in the truck and backed it up, and nothing would have happened. The undisputed evidence also shows that the mast could not come down automatically or of its own accord, but that certain pins had to be pulled and a lever manipulated before it could be lowered, and, as shown above, appellee, at one place said the accident could not have happened any way other than by Greer deliberately lowering the mast into the wires. The undisputed evidence is that, after the accident, the mast was against the wire and the pins had been pulled.

Therefore, we find it is established by the great preponderance of the evidence, if not the undisputed evidence, and by the testimony of the appellee himself, that Greer lowered the mast into the high power line. The conclusion is then inescapable that this action on the part of Greer was a new and independent agency, and an unexpected and unforeseen act, and was, as a matter of law, the sole proximate cause of the injury. Wherefore, appellant is not liable.

Appellant argues rather convincingly that appellee is guilty of contributory negligence as a matter of law, because he admitted that he drove the truck up to its position facing north, whereas he could have faced it south, east, or west, and the mast, when lowered, would not have touched the highline, etc. (The evidence is conflicting as to these directions, but undisputed that three were safe, and he choose the one that was dangerous.) We are inclined to accept this theory of appellant's, but we cannot hold that such action was a proximate cause in this case because we consider the action of Greer the sole proximate cause, as above indicated: West Texas Utilities Co. v. Harris, supra.

For all of the above reasons, jointly and severally, we hold that the trial court was in error in not granting appellant's motion for an instructed verdict, and it becomes our duty to reverse this case.

Wherefore, said cause is reversed and rendered in favor of appellant, Nance Exploration Company, defendant in the trial court.