**B. L. HUMPHREYS, Appellant,**

v.

**TEXAS POWER & LIGHT COMPANY, Appellee.**

**No. 17071.**

Court of Civil Appeals of Texas.

Dallas.

March 22, 1968.

Rehearing Denied April 19, 1968.

David H. Burrow, of Helm, Jones & Pletcher, Houston, Mark Martin, of Strasburger, Price, Kelton, Martin & Unis, Dallas, Joe H. Tonahill, March H. Coffield, Jasper, for appellant.

Logan Ford & Wayne Pearson, of Burford, Ryburn & Ford, Dallas, for appellee.

CLAUDE WILLIAMS, Justice.

This is an appeal by B. L. Humphreys from a take nothing summary judgment in his action against Texas Power & Light Company for personal injuries. Texas Employers Insurance Association, the workmen's compensation insurance carrier for

C. C. Teague & Son Construction Company, Inc., Humphreys' employer, intervened and sought reimbursement for total and permanent workmen's compensation benefits which such company had paid to Humphreys for the serious injuries sustained by him on November 29, 1963 when he came in contact with an energized electrical line while performing his work as a lineman. In his suit against Texas Power & Light Company Humphreys charged that such company, and its employees, were guilty of various acts of negligence which proximately caused him to sustain his injuries. Defendant company filed its motion for summary judgment, supported by various affidavits, depositions, and testimony adduced on a plea of privilege hearing in Nacogdoches County. This motion was opposed by Humphreys who also filed affidavits, depositions, etc. Following hearing, the trial court sustained the summary judgment motion and decreed that Humphreys take nothing by his action.

Proper resolution of the questions presented by appellant's points of error requires a summarization of the material facts which were before the court at the time the summary judgment motion was sustained. Since we are here confronted with a judgment rendered pursuant to Rule 166–A, Vernon's Texas Rules of Civil Procedure, the sole question is whether material issues of fact were presented to the trial court. If so, it would necessarily follow that the judgment cannot be sustained. Moreover, in such a situation we are enjoined to examine the evidence presented in a light most favorable to appellant.

B. L. Humphreys had, for a number of years prior to his injury, been an electrical lineman. He had first served an apprenticeship and then successfully passed an examination which qualified him to be what is known as a journeyman lineman. He had had several years' experience as a journeyman lineman and this work involved the handling of energized as well as non-energized electrical lines. He had been train-

ed to use various types of protective devices to minimize the hazards of injury caused by contact with high-powered electrical lines while performing his duties. He was thoroughly familiar with the dangers involved with and incident to his work around energized lines. About four or six weeks prior to the time he was injured Humphreys went to work for C. C. Teague & Son Construction Co., Inc. (hereinafter referred to as Teague) as a journeyman electrical lineman and was employed by such company in such capacity at the time of his injury. During his period of employment with Teague he ordinarily worked as a member of crews consisting usually of seven men. His foreman was Mr. Henry J. Watkins, who was also his brother-in-law. His work for Teague was the usual work of a lineman and included performing his duties around energized lines from time to time. He received orders concerning his work from Mr. Watkins. His work necessitated him to climb high poles and perform work in such position.

Teague, a corporation engages in pole line and electrical distribution construction. On May 1, 1962 Teague, as contractor, entered into a written contract with appellee Texas Power & Light Company (hereinafter called Light Company), in which it was agreed that Teague would construct, repair and maintain portions of the utility system owned and operated by Light Company, such work to be designated in detail from time to time by the company. As to the relationship between the two organizations, the contract provided:

"It is understood and agreed that in doing the said work, Company will not exercise any control over the manner hereof, and Contractor will act and be considered as an independent contractor and will assume all liability for damages to persons or property occurring by reason of said work."

This contract was in full force and effect on November 29, 1963. Between the date of the execution of the contract and November 29, 1963, the light company had, from time to time, designated various work to be done by Teague and the work was performed by Teague as designated by Light Company's preparation and execution of a work authorization and drawing of the particular work to be performed. Copies of these instruments were furnished to Teague's foreman who in turn would direct the work of his men. Generally the compensation paid by the light company to Teague was computed on a unit basis. The schedule of payment varied depending upon whether the work was to be done on energized lines or de-energized lines, the rate being generally higher when the work was to be performed on energized lines.

The testimony reveals that it was the custom and practice of Teague and Light Company, in carrying out the general contract between them, that when Teague needed to de-energize lines being worked upon its employees would request Light Company for permission to de-energize and such permission was given with the understanding that Teague's employees were to do the actual de-energizing as well as the re-energizing. The time to re-energize was to be left to the Teague employees' discretion but with the understanding that the lines were not to be left de-energized any longer than was absolutely necessary for Teague and its employees to complete their work.

During the month of November 1963 Light Company prepared a work authorization, pursuant to the written basic contract, and also prepared plans and specifications which called for the stringing of new conductors and the transfer of existing conductors from an old 40-foot pole to a new 45-foot pole within the City of Nacogdoches. Copies of the authorization and drawings were furnished to Watkins who was in charge of the work for Teague. On November 29, 1963 the Teague employees, including the foreman Watkins and the appellant Humphreys were engaged in the work called for in the authorization. According to the testimony of Watkins, at

approximately 7:00 A.M. on that date, Mr. Burns, the distribution superintendent of the light company at Nacogdoches, came to the work site and Watkins sought and obtained authorization from him to de-energize certain lines which were attached to the pole which was being worked on by the Teague employees. Burns gave such consent for Teague and its employees to de-energize the lines, it being understood that Teague personnel would notify Light Company's local office that such work had been done and would also notify the customers who would be affected by such de-energizing. Watkins testified that Burns further requested that the lines would be de-energized no longer than was necessary to permit Teague and its employees to perform the work. There was no direction or understanding as to when the lines would be re-energized but it was consistent with the working arrangements that Teague personnel would re-energize the lines when their work had gotten to the point where same could be re-energized in safety. Watkins, as foreman, had the right to make the decision as to the re-energizing of the lines.

At approximately 8:00 A.M. on the day in question, after the conversation between Watkins and Burns and after Burns had left the scene, Watkins did de-energize all lines on the pole in question with the exception of one primary conductor coming into the pole from the north. After the lines were de-energized Watkins and Humphreys were on the pole carrying on the work. At about 3:00 P.M. on that date Watkins, who was working on the pole about four or five feet above Humphreys, re-energized the lateral conductor containing 7200 volts of electricity which came off the pole in a southeasterly direction. He energized this line by closing a "door" of a fuse disconnect which was attached to the upper cross-arm on the pole. He did not tell Humphreys, immediately below him on the pole, that he had energized this lateral conductor. Watkins then climbed down from the pole and started to climb another pole for the purpose of re-energizing certain secondary conductors. In the meantime Humphreys, being alone on the pole, reached up with his hand and made contact with the jumper attached to the bottom of the fuse disconnect which was in turn attached to the lateral running off in a southeasterly direction and which had just been re-energized by Watkins. This resulted in Humphreys receiving serious burns to his body.

Appellant's first five points of error, couched in varying terms, and grouped together for argument, advances the proposition that the record demonstrates issues of fact that Light Company had failed, either totally or substantially, in the fulfillment of its nondelegable duty to warn appellant of the dangerous conditions under which he would be working. An analysis of appellant's argument under these points indicates three separate contentions: (1) that appellee Light Company's warning to appellant of the existence of a dangerous condition relating to his work was inadequate; (2) that appellee's duties to maintain its facilities in a safe condition are nondelegable; and (3) that appellee caused appellant to rely on appellee's following a course of conduct as provided by certain rules of the National Electrical Safety Code. We shall discuss these contentions in the order set forth.

■ The *sine qua non* of appellant's prime point concerning appellee's failure to warn appellant of the existence of a danger inherent in the work is the existence of a legal duty to warn under the circumstances here presented. After careful consideration of the entire record in the light of the often repeated rules concerning appellate review of summary judgments, we have arrived at the conclusion that there was no legal duty imposed upon appellee Light Company to give appellant Humphreys warning of the conditions existent at the time of the performance of the work in question.

The legal status of the parties involved is clearly defined. Appellee Light Company was the owner of the premises in question. Appellant Humphreys and his employer, Teague, were business invitees upon the premises. The record demonstrates as a matter of law that Teague, in the performance of the work in question, was an independent contractor. The test of the law in determining such relationship is not the actual exercise of control but the retention of the right to exercise control over the contractor's work. The Supreme Court of Texas, in Newspapers, Inc. v. Love, 380 S.W.2d 582 (1964), said that the agreement of the parties providing that the contractor shall be an independent contractor and providing no right of control shall be controlling in determining the relationship of the parties. This rule is subject to two exceptions: first, the written agreement will not control if the evidence shows that such contract is a mere sham, subterfuge or cloak designed to conceal the true relationship between the parties; and second, the agreement will not control if the written contract has been modified by subsequent agreement, either express or implied. It is also well established that the relationship of independent contractor is not destroyed by sporadic acts of control. 30 Tex.Jur.2d, § 4, pp. 478, 479; Anchor Casualty Co. v. Hartsfield, 390 S.W.2d 469 (Tex.Sup. 1965). Applying these rules we find the record devoid of any facts which would indicate that the contract between Teague and appellee was a subterfuge or that it had been modified by subsequent agreement, either express or implied. The facts are well established that appellant was given orders relating to his work by his foreman, Watkins, and was never given specific orders by anyone connected with appellee Light Company. Neither is there any probative evidence in this record to prove a reservation on the part of appellee Light Company of the right to control Teague or any of its employees in the performance of the work called for by the contract.

It is, of course, the law of this state that an owner of premises is under a legal duty and obligation to invitees to warn of dangerous conditions on the premises which are not open and obvious. Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368 (Tex.Sup.1963). However, the law is equally well established in this state that such owner or occupier of premises owes no legal duty to his invitees to warn of dangerous conditions on the premises which are as well known to them as they are to him. McKee v. Patterson, 153 Tex. 517, 271 S.W.2d 391 (1954); Hall v. Medical Building of Houston, 151 Tex. 425, 251 S.W.2d 497 (1952).

Probably the latest expression of our Supreme Court, and the one that principally controls the disposition of this case, is that of Delhi-Taylor Oil Corp. v. Henry, 416 S.W.2d 390 (1967), in which the Supreme Court, overruling prior decisions to the contrary, holds that while an owner does owe a duty to employees of an independent contractor to take reasonable precautions to protect them from hidden dangers on the premises or to warn them thereof, an adequate warning to or full knowledge by the independent contractor of the dangers should and will be held to discharge the landowner's alternative duty to warn the employees. In other words, the Supreme Court says that assuming there is a duty to warn such duty is fulfilled and complied with by notice to or warning to the independent contractor who, in turn, should warn his employees.

However, where there is no hidden or concealed danger on the premises and the dangerous condition complained about is as well known to the independent contractor and his employees as to the owner himself no duty exists on the part of the owner to give a warning. This is especially true when, as here, the dangerous condition arises from and is inherent in the performance of the work which the contractor was employed to do rather than from any condition of the premises where the work

was to be performed. In such case no duty devolves upon the landowner to warn. Stated differently, the rule is that where the dangerous conditions complained about are transitory and arise out of the performance of the work the owner of the premises is under no duty or obligation to see to it that the work is done safely. Such duty under such circumstances falls upon the contractor and not upon the owner. Moore v. Texas Company, 299 S.W.2d 401 (Tex.Civ.App., El Paso 1957, writ ref'd n. r. e.); Perez v. Hernandez, 317 S.W.2d 81 (Tex.Civ.App., San Antonio 1958, writ ref'd n. r. e.); Humble Oil & Refining Co. v. Bell, 180 S.W.2d 970 (Tex.Civ.App., El Paso 1944, writ ref'd n. r. e.); and Nance Exploration Co. v. Texas Employers' Ins. Ass'n, 305 S.W.2d 621 (Tex.Civ.App., El Paso 1957, writ ref'd n. r. e.).

In Tyler v. McDaniel, 386 S.W.2d 552 (Tex.Civ.App., Dallas 1965, writ ref'd n. r. e.), and expressly approved by the Supreme Court in Delhi-Taylor Oil Corp. v. Henry, 416 S.W.2d 390 (1967), we had occasion to review and reiterate these basic rules. The facts there were similar in many respects to those before us. No duty to warn existed there and no duty exists here.

The dangerous condition complained about was the energized line and this condition was known better by Teague than by Light Company. So if there was a duty on the part of anyone to warn appellant, it was clearly the duty of Teague and not of appellee. Moreover, the dangerous condition was transitory in nature and an inherent part of the very work being performed by Teague under its contract with appellee. The real and only danger of which appellant complains was the danger resulting during the course of the work being performed when Watkins, appellant's foreman, proceeded to energize one of the lines on the pole where appellant was working and admittedly failed to advise appellant of this action. Watkins was working only a few feet above appellant's head at the time he energized the line. No one connected with appellee was in the vicinity on that occasion. Watkins had obtained general instructions and permission from appellee's agents earlier in the day, which would give him, Watkins, the complete discretion as to when to de-energize lines and when to energize the lines. This Watkins proceeded to do and though it would have been a very simple thing for him to have warned his employee Humphreys he did not do so. Under these circumstances, under the controlling law of this state, appellant's contention concerning failure on the part of appellee warn him of the dangerous condition is without merit and is overruled.

Appellant's next contention concerning appellee Light Company's failure to perform a nondelegable duty is likewise without merit. This contention is predicated upon the proposition that working on or near electrical lines is inherently dangerous and therefore the duty to warn of such danger cannot be delegated by appellee. Jacksonville Ice & Electric Co. v. Moses, 63 Tex.Civ.App. 496, 134 S.W. 379 (1911, writ ref'd). However, under the circumstances here presented where it is undisputed that appellant was an experienced electrical lineman and since he fully knew, realized and appreciated the danger incident to working around energized lines, it cannot be said that the work falls in the category of being inherently dangerous as that term is generally applied. It has been held that work performed on or near electrical lines is not inherently dangerous work. Allen v. Texas Electric Service Co., 350 S.W.2d 866 (Tex.Civ.App., Fort Worth 1961, writ ref'd n. r. e.); Nance Exploration Co. v. Texas Employers' Ins. Ass'n, 305 S.W.2d 621 (Tex.Civ.App., El Paso 1957, writ ref'd n. r. e.); and Texas Electric Service Co. v. Holt, 249 S.W.2d 662 (Tex.Civ.App., Fort Worth 1952, writ ref'd n. r. e.). Moreover, the rule that the owner is liable to third persons for negligence of the independent contractor when the work being done is inherently dangerous does not apply to employees of independent contractors. In Perez v. Hernandez, 317 S.W.2d 81 (Tex.Civ.App., San Antonio

1958, writ ref'd n. r. e.), the court said that an employee of an independent contractor is not a "third person" within the rule that an employee of an independent contractor is liable to third persons for negligence in the performance of the work that is inherently dangerous. See also Nance Exploration Co. v. Texas Employers' Ins. Ass'n, supra; Humble Oil & Refining Co. v. Bell, 180 S.W.2d 970 (Tex.Civ.App., El Paso 1944, writ ref'd n. r. e.); and Sword, Houston Fire & Cas. Ins. Co. v. Gulf Oil Corporation, 251 F.2d 829 (5th Cir. 1958).

▇▇▇▇ Finally, in connection with these points of error, appellant argues that appellee Light Company had violated a safety rule incorporated in the National Electrical Safety Code concerning warning workmen relating to dangerous conditions and that appellee had caused appellant to believe that he could rely upon the application of such safety rules. We cannot agree with appellant for several reasons. The provision of the National Electrical Safety Code relied upon by appellant is Rule 421–E and the only place in the record we find such rule is the excerpt thereof set forth in plaintiff's third amended original petition.* According to such unverified petition Section 421–E of the National Electrical Safety Code provides that instructions for making alive equipment or lines which have been killed by permission of the chief operator to protect workmen shall not be issued by him until all workmen concerned have been reported clear. Obviously this rule has not been incorporated and made a part of Art. 1436a, Sec. 1, Vernon's Ann.Civ.St. of Texas because such statute specifically incorporated the provisions of the National Electrical Safety Code only "as to clearances." The rule relied upon has no provision concerning clearances. Not being a part of the statute of which the court could take notice it must have been alleged and proved in the proper manner. As stated, the only place in the record the pro-

vision of the rule appears is in plaintiff's third amended original petition which was filed after the court considered the motion for summary judgment. We have only recently held that in summary judgment proceedings the unsworn pleadings cannot be accepted as true. Cotten v. Republic Nat. Bank of Dallas, 395 S.W.2d 930 (Tex.Civ. App., Dallas 1965, writ ref'd n. r. e.) and Turinsky v. Turinsky, 359 S.W.2d 114 (Tex.Civ.App., Dallas 1962, no writ).

Appellant's Points 1 through 5, inclusive, are without merit and are overruled.

▇▇ By his sixth point of error appellant contends that the record before the trial court demonstrated a question of fact as to whether or not the vertical clearance between the two sets of horizontal cross-arms on the appellee's pole on which appellant was injured was less than two feet apart in violation of Rule 238–A of the National Electrical Safety Code (being a part of Art. 1436a, V.A.C.S.), forcing appellant to work in a dangerously crowded space and exposing him to unknown danger. As a part of the work to be performed by Teague for appellee Light Company two cross-arms were to be installed on the new 45-foot pole. These cross-arms consisted of two timbers, one placed on either side of the pole and then bolted together. There is a conflict in the testimony as to the spacing betwen the top cross-arm and the lower one. Watkins, by deposition, testified that the spacing was two feet. However, in an affidavit used in reply to the motion for summary judgment Watkins states that the spacing was less than two feet. Another witness testified the spacing was 30 inches and appellant testified by deposition that the spacing was about 18 inches. The specifications issued by appellee Light Company called for two feet spacing. The record is undisputed that if the spacing was less than two feet it was done so by appellant himself. The record further indicates that at

---

* In appellant's second amended petition before the court at the time the summary motion was considered there appears an interlined reference to the rule "421 E" but the contents of such rule were not therein set forth.

the time of the accident there were no wires or conductors attached to the lower cross-arm, same having been laid out on the ground and were still on the ground at the time of the accident. In other words, Humphreys was not required to work between the two cross-arms, regardless of their spacing, at a time when energized lines were both above and below him.

Rule 238–A of the National Electrical Safety Code, which admittedly has become a part of Art. 1436a, V.A.C.S., provides that if the top cross-arm carries a supply conductor with voltage from 750 volts to 8700 volts *and* the lower cross-arm carries a supply conductor with voltage from 750 volts to 8700 volts the spacing between the cross-arms shall be two feet. Thus it is apparent that the rule contemplates that both the *upper and lower* cross-arms carry electrical conductors. There is no evidence relating to spacing requirements where there are no conductors on one of the cross-arms. Teague, the independent contractor, had the exclusive right to supervise the details of Humphreys' work. There is no evidence that the appellee Light Company had discovered, or had an opportunity to discover, any defect in the spacing arrangement between the cross-arms, if there was such a defect.

Finding no merit in appellant's sixth point of error, the same is overruled.

▅▅▅▅ By his seventh and last point of error appellant contends that the record before the trial court demonstrates a question of fact as to whether or not Henry J. Watkins was the borrowed servant or special agent of the appellee Light Company. Under this point appellant argues that appellee had made Watkins, Teague's foreman, its special agent in the matter of energizing and de-energizing the lines in question and therefore Watkins' failure to notify Humphreys of the re-energizing of the line in question was the negligence of appellee corporation. The burden of appellant's argument is that the general instructions and authorizations given by Burns, appellee's representative, to Watkins, Teague's foreman, relating to Watkins' right to de-energize lines, when necessary for the performance of Teague's work, and to re-energize the lines at a time when work had progressed sufficiently to justify such re-energizing amounted to such exercise of control over Watkins as to create the relationship of borrowed servant between Watkins and appellee Light Company. We cannot agree with appellant. It is true that a person may be a general servant of one employer, but such fact does not prevent him from becoming the special agent or servant of another, who may therefore become liable for his acts. Hilgenberg v. Elam, 145 Tex. 437, 198 S.W.2d 94 (1946). However, the Supreme Court in Producers Chemical Co. v. McKay, 366 S.W.2d 220 (1963), discussed in detail the essential elements of the relationship of borrowed servant and employer and pointed out that the true test in determining the question is that of right of control. The Supreme Court pointed out that if there is a contract between the employers which expressly provides that one or the other shall have the right of control such contract shall be looked to primarily for a resolution of the question. The Supreme Court further pointed out that general instructions and directions given by one employer to the employee of another were not sufficient to raise the issue of right of control in the manner of performance of the work to be done. When we apply this rule to the facts before us we find no evidence which would justify the conclusion that Watkins became the special employee of appellee corporation merely because he asked for and obtained permission to de-energize and energize certain lines which was necessary for the safe performance of the contract between Teague and appellee Light Company. Appellant's seventh point is overruled.

Our examination of this record reveals no issue of fact and therefore the trial court's action in granting summary judgment was correct. The judgment is

Affirmed.