SAMUEL L. VALENTINE, *in error, versus* SARAH NORTON, *Administratrix.*

A writ of error lies to obtain relief from an illegal taxation of costs.

When such illegal taxation is apparent on the record, the error is one of law ; when not thus apparent the error is one of fact.

When the error assigned is one of law, there is nothing upon which the Court can act, except the transcript of the record.

Documents and papers filed in the case form no part of the record, unless incorporated into it.

Any action which survives against the personal representatives of one party must be considered as surviving in favor of the personal representatives of the other party. — Per SHEPLEY, C. J.

An action for misfeasance of a sheriff or his deputy does not survive against his personal representatives, nor in favor of the personal representatives of the party injured.

A judgment recovered by an administratrix, for such misfeasance committed in the lifetime of her intestate, is reversible on error.

WILLIAM SNOW, in 1834, recovered a judgment against Moses Norton.

Under the act of 1831, entitled " An act for the abolition of imprisonment of honest debtors for debt," he caused a citation to be issued for said Moses Norton to appear before two justices of the quorum to make disclosure of his business affairs.

The citation was placed in the hands of Samuel L. Valentine, the plaintiff in error, then a deputy sheriff of the county of Penobscot, to be served on Snow. Valentine returned upon said citation that he had left an attested copy at said Moses Norton's last and usual place of abode.

Moses Norton brought an action, in the county of Somerset, against Valentine, alleging that the said return of the citation was false. That action was tried in the District Court, 1837, and a verdict was rendered against Valentine. He filed exceptions to the rulings of the District Judge, upon which, in 1838, a new trial was ordered.

At the September term of the Supreme J. Court, 1839, the said Valentine was defaulted. After default, he appeared and

moved to be heard in damages.  The action then stood continued from term to term.

At the June term, 1841, the death of said Norton, plaintiff in the suit, was suggested.  The Court in adjudicating the point upon exceptions, being of opinion that the action survived, allowed the administratrix, (the present defendant,) to come in, and prosecute the suit, which was thence continued till the September term, 1848, when the judgment was rendered, and the administratrix recovered against said Valentine, $25,25 damages, and $82,90 costs.

This writ of error is brought by Valentine to reverse said judgment, upon errors alleged as follows : —

1. That the judgment aforesaid was given for the said Sarah Norton, administratrix, against the said Samuel L. Valentine, whereas by the law of the State, the judgment ought to have been rendered, that the action be abated by the death of the said Moses Norton ; 2. that the cause of action set forth in the plaintiff's writ was for a tort to the person, and the judgment therefore ought to have been rendered as aforesaid, that the action be abated by the death of the plaintiff; 3. that after the death of the original plaintiff was suggested on the record, the said Sarah Norton, administratrix of the goods and estate of the said Moses Norton, deceased, was admitted to appear in Court, and take upon herself the prosecution of the action; whereas the judgment ought to have been rendered, that the action be abated by the death of the plaintiff; 4. that the said Samuel L. Valentine was defaulted at September term, A. D. 1839, and that fees for travel and attendance were taxed and allowed for the plaintiff, for all the subsequent terms of said Court, including that of last September, when judgment was rendered for the plaintiff, whereas no costs were taxable after said default; 5. that fees for travel and attendance of the plaintiff were taxed, at the term his death was suggested and for each term afterwards, until the said administratrix came into Court and took upon herself the prosecution of said action, whereas no costs were taxable during those terms.

The defendant pleaded, " *in nullo est erratum*," reserving,

with consent of the plaintiff, leave to offer any motions. A motion was accordingly made by defendant's counsel to dismiss the writ of error, on account of a joinder of errors of *law* and *fact*.

As the decision of the Court turned upon only one of the assigned errors, the arguments relative to the others are omitted.

*William Abbott,* for plaintiff in error.

By the common law, no action could be maintained *by* or *against* an executor,.for a tort done to the person or property, real or personal, of the testator. And the maxim, *actio personalis moritur cum persona,* was univeisally true, as applied to actions founded on tort. 1 Saunders, 216, note 1 ; 1 Williams' Ex'ors, 511 ; 5 Pick. 257 ; Cowper, 372. And this maxim does not embrace all actions, which do not survive. Thus actions, founded upon an express promise, or an implied promise, made to the deceased, where the damage consisted entirely in the personal suffering of the deceased, without any injury to his personal estate, do not survive.

An executor or administrator cannot maintain an action for a breach of promise of marriage to the deceased, where no special damage to the *personal estate,* is or can be stated on the record. 1 Pick. 71 ; 2 M. & S. 409.

Nor can an administrator maintain an action affecting the life or health of the deceased, arising out of the unskilfulness of medical practitioners, or the *imprisonment of the party,* induced by the negligence of his attorney. 2 Maule & Selw. 416.

Executors are the representatives of the *debts* and *goods* of the deceased, but not of their *wrongs,* except where those wrongs operate to the injury of their personal estate. *Ibid.*

Where, therefore, the action is founded on any misfeasance or malfeasance, or arose *ex delicto,* and where the declaration alleges a tort done to the person or property of another, and where the plea must be not guilty, there the action dies with the person. 1 Saunders, 216, note 1.

This rule has been somewhat modified by the stat. 4 Edw.

III. c. 7, and by our own statutes, so that at this day an executor or administrator may have the same actions for an injury done to *personal property* of the testator in his lifetime, as the testator himself might have had.    *Ibid.;* 1 Williams' Ex'ors, Book 3, sect. 1 ; Toller, 157.

But the stat. of Edward III. does not extend to injuries to the *person*, or to the freehold of the testator; and as to injuries to the *person*, the common law remains unchanged, with one or two exceptions, not affecting this case.   1 Williams' Ex'ors, 511 ; 2 Pick. 527 ; Toller, 160.

Where one by tort acquires the property of another, an action lies against the administrator of the wrongdoer; but where by such act the deceased acquired no gain, the action dies.   13 Maine, 454.   And an action against a deputy sheriff for non-feasance does not survive against his executor.   *Ibid. ;* 4 Mass. 482.

The survivorship, or non-servivorship of actions, is mutual. 1 Saund. 216, note 1; 1 Pick. 71.

If the stat. 1821, chap. 92, sec. 2, and the Revised Statutes, chap. 104, § 18, be compared with the cases, 13 Maine, 454, and 4 Maine, 432, it will clearly appear that actions for malfeasance and misfeasance do not survive at common law ; and that those statutes, which change the common law as to sheriffs, leave it as it was in regard to deputies.

Let us apply the foregoing authorities to the question in dispute.   The original action is case, and the proper plea, not guilty.   The action is founded on a tort, and the only allegation of damages in the record is, that the plaintiff was committed to jail, and there confined twelve hours.   It does not appear, that his personal property was affected by this confinement; and that this was an injury to the *person only,* seems too clear for argument.

*John S. Abbott,* for defendant in error.

As to the common law doctrines presented, it is not important that I should either controvert or admit them.

The original action was defaulted, Sept. 1839, in the lifetime of Norton.   Nothing then remained to be done but to

assess the damage and enter judgment. For those purposes, even if Valentine had not been defaulted, the administratrix might properly have come in. How much more, after the default?

She came in, September term, 1841. The Revised Statutes had then been passed. This case is embraced in chap. 120, § 15.

But this identical point was settled upon the former exceptions.

The matter therefore is *res adjudicata*. Valentine having elected to have this question *then*. decided by the full Court, cannot now in this form be permitted ever to raise the question. And if the case can be legitimately brought before the Court, after it has been once adjudicated by the full Court upon argument, and their opinion has been carried into judgment, then I cite the decision of the Court in this very case, upon this very point, as conclusive and not to be controverted.

*Wm. Abbott*, in reply.

It is contended that this is *res adjudicata*, and therefore the writ of error does not lie. I suppose there is no question that a writ of error *coram nobis* lies to the Supreme Court, and I do not well understand why a writ of error should be brought, unless there had been a judgment to reverse.

The taxation of the cost is a matter of law, and the bill itself is a part of the record. If it were extrinsic of the record, it must be a matter of fact, and ought to be assigned as such. The writ of error complains, that " in the *record* and *proceedings*, and also in the rendition of the judgment, manifest error hath happened;" and the Chief Justice is commanded to " send the *record* and *process* of the suit aforesaid, with *all things touching them*," &c. Surely the writ, judgment and bill of cost must be embraced in these terms. Suppose a defendant should bring a writ of error and allege, that no service had been made upon him, or in case of a judgment upon a report of referees, that the claim had not been signed by the party, might not the writ, or the submission, be produced in proof of the allegations? And yet neither of these facts ap-

pears in the judgment. So in this case, it does not appear from the judgment, that there was any illegal taxation or any taxation at all, except from the result, which is inserted in the judgment, but it does appear from the *record* and *proceedings*. Will not the Court examine them and see, whether there is any thing illegal?

But it is contended that the taxation is correct, and that the plaintiff had a right to tax cost until the action was disposed of, because the defendant was to be heard in damages. No authority is cited to sustain this position unless it be the Revised Statutes, c. 115, § 100. But that is clearly inapplicable to the present case. It only regulates the taxation of cost in actions on the trial docket, that are not defaulted, but says not a word in regard to cost after a default. Where the defendant is to be heard in damages, it is the duty of the plaintiff to give notice to him or his attorney, and if he does not attend, the Court will render such judgment, as the testimony of the plaintiff will justify. The plaintiff may take his own time for moving in the case, and the defendant must abide his time. He has it not in his power to delay judgment after due notice, and it does not appear, even if he had, that he exerted it.

SHEPLEY, C. J. — This writ of error has been sued out to procure the reversal of a judgment rendered at a term of this Court holden in this county in the month of September, 1848. By an agreement between the counsel the benefit of a motion to dismiss is reserved to the defendant in error without prejudice from the plea of *in nullo est erratum.*

A motion is accordingly made to dismiss the writ because there is a misjoinder of errors in law and of errors in fact. It is contended that the three first errors assigned are errors in law, and that the two last are errors in fact.

The two last errors assigned are in substance " that by the record aforesaid it appears," that fees for travel and attendance were taxed and allowed for the plaintiff after the defendant had been defaulted, and that like fees were taxed and allowed after the death of the original plaintiff, until the administratrix came

in and took upon herself the prosecution of the suit. These are not assigned as errors in fact but as errors in law apparent upon the record. The motion is therefore overruled.

A writ of error may be maintained to obtain relief from an illegal taxation of costs. *Field* v. *Turnpike Corporation*, 5 Mass. 389; *Waite* v. *Garland*, 7 Mass. 453; *Thomas* v. *Seaver*, 12 Mass. 379. When such a taxation is apparent on inspection of the record, the error is one of law, when not so apparent, it is one of fact. In the present case the errors respecting costs are assigned as apparent of record, yet upon inspection of the record no such errors appear.

The counsel for the plaintiff in error contends, that a memorandum exhibiting the costs taxed and filed with the papers in the case, is to be regarded as a part of the record. Nothing is presented by the writ of error to a court of errors but a transcript of the record. Papers and documents filed in the case, but not incorporated into the record, constitute no part of it. *Kirby* v. *Wood*, 16 Maine, 81. No correction of the errors alleged to have been committed in the taxation of costs, could be made in this case by an assignment of them as errors in law.

The three first errors alleged are in substance, that the action appears of record to have been in form an action of tort, with a declaration asserting, that the plaintiff in error, acting as a deputy of the sheriff of the county of Penobscot, made a false return of service upon a precept to the injury of the original plaintiff. That during the pendency of that action the plaintiff died, and his administratrix was admitted to take upon herself the prosecution of the suit, and that judgment was rendered in her favor for damages and costs.

The question, whether that action survived, appears to have been presented to this Court at its session in this county in the month of June, 1841, and a decision appears to have been made, that it did survive. Whether the nature of the action was then well understood, or the importance of the question duly appreciated, it is now unimportant to inquire, for it be-

Valentine v. Norton.

comes the duty of the Court to consider whether there be error in the record of the judgment as presented.

There can be no doubt, that such an action as is there described would not by the common law survive. By the statute then in force, c. 92, § 2, provision was made, that "actions for malfeasance or misfeasance of any sheriff or of his deputies may be sued against the executors or administrators of such sheriff, in the same manner as if the cause of action survived against the executor or administrator at common law." If the action by virtue of the provisions of the statute survived against the personal representative of a deceased sheriff, it must be considered as surviving in favor of the personal representative of the plaintiff, for it could not have been the intention to have it survive after the decease of one party and not survive after the decease of the other. Yet there are no words in the statute declaring that such an action shall survive to the personal representative of the deceased plaintiff. Such however has been the decision. *Paine v. Ulmer*, 7 Mass. 317. The sheriff being responsible for the acts of his deputies, who are by law liable to make compensation to him for any damages, which he may have been compelled to pay for their defaults, it would seem to be useless to require, that a circuitous course should be pursued attended by increased litigation to arrive at the result, that the deputies may be required to pay damages occasioned by their misfeasances not only to the person injured, but to his personal representative after his decease. If the design of the statute was to provide, that the cause of action in such cases should survive ; and such appears to have been its construction so far as it respects the plaintiffs in such suits, the provision, that such actions might be brought against the executors or administrators of the sheriff, might have been considered as only an affirmance of the common law ; and it might have been also considered, that an action surviving by the provisions of a statute might by the common law, be prosecuted by or against the personal representative of a deceased party. If this were

an open question, it might be worthy of consideration, whether the statute might fairly receive such a construction.

The language of the statute already quoted is however an exact transcript from the second section of the act of Massachusetts passed on March 13, 1806 ; and that language had received a judicial construction before it was re-enacted in this state. *Cravath* v. *Plympton*, 13 Mass. 454. It was decided in that case, that it did not authorize such a suit to be maintained against the personal representative of a deceased deputy sheriff. If the action did not survive against the personal representative of one party, it could not in favor of the personal representative of the other party.

The principle has been adopted in this State, that the Legislature is presumed by the re-enactment of the same language to have sanctioned the judicial construction, which that language had before received. That language, so far as it respects this question, does not appear to have been varied on its re-enactment in the Revised Statutes, c. 104, § 18.

According to the construction, which that language has received, the original action did not survive, the judgment therefore rendered in favor of the defendant in error was erroneous, and it is reversed ; and judgment is to be entered in that action, that the suit abated by the death of the plaintiff.