VASSILA A. TOURIS et al., as Executors of SOTIRIOS A. TOURIS, Deceased, Respondents, *v.* BREWSTER & COMPANY, INCORPORATED, Appellant.

**Motor vehicles — negligence — duty of automobile driver leaving automobile standing unattended in safe place — decedent killed by runaway automobile left unattended — evidence — when evidence shows that such automobile was left with engine stopped, emergency brakes set, ignition locked and key taken away, so automobile could not start except for interference by meddlers, jury could not be permitted to find the driver negligent.**

1. A person who leaves an automobile unattended in a safe place in a street or road is bound to exercise, not the highest degree of care possible to prevent the starting of the car, but only such care as a reasonable person would exercise under the same conditions.

2. An employee of defendant, a mechanical engineer in charge of its testing department, after driving a car for the purpose of testing it, was returning with it to defendant's factory but went a short distance from the direct route to the place of a friend to examine and put in order an engine upon a motor boat. Upon reaching this place he put the car at a point designated by his friend, which was perfectly level and where other cars, held only by the emergency brakes, had been left with safety many times before. He stopped the engine, put on the emergency brakes, which were in good condition, locked the ignition, put the key in his pocket and proceeded to a dock upon the river and was there some time adjusting and testing the engine. While there plaintiff's testator with his family and other picknickers arrived in the vicinity of the car. Between the place where the car was left and the river was a spring of water, and the ground at this point is rough and quite steep. The testator went to the spring to get water, and while doing so, the car plunged down the embankment, struck him and inflicted injuries from which he died. The car, left as aforesaid, could not move unless interfered with. That it was left in a safe place, except for such interference, is evident from the fact that it had stood there upwards of two hours before the accident. During that time several people were about the car and boys were seen in or upon it and were warned and ordered to keep away from it, and when it started two boys were either taken from it or jumped therefrom. To permit the jury to find defendant negligent, under the facts here stated, which are substantially uncontradicted, would be to make the owner of an automobile liable beyond reason and common sense. The judgment for plaintiff should, therefore, be reversed. (*Maloney* v. *Kaplan*, 233 N. Y. 426, followed.)

*Touris* v. *Brewster & Company*, 202 App. Div. 803, reversed.

(Argued February 1, 1923; decided March 6, 1923.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered July 14, 1922, affirming a judgment in favor of plaintiff entered upon a verdict.

*John A. Garver, J. Arthur Hilton* and *Robert H. Woody* for appellant. There was an intervening cause of the accident and the complaint should, therefore, have been dismissed. (*Perry* v. *Rochester Line Co.*, 219 N. Y. 60; *Sorrusca* v. *Hobson*, 155 N. Y. Supp. 364; *Frashella* v.

*Taylor,* 157 N. Y. Supp. 881; *Vincent* v. *Crandall, etc., Co.,* 131 App. Div. 200; *Lazarowitz* v. *Levy,* 194 App. Div. 400; *Rahd* v. *Duquesne Light Co.,* 255 Penn. St. 409; *The Lusitania,* 251 Fed. Rep. 715.)

*Bertrand L. Pettigrew, Martin B. Faris, Julian S. Eaton* and *John A. Hardiman* for respondents. The verdict is amply supported by the evidence as to the gross negligence of the person intrusted with the care and control of defendant's automobile. (*Maloney* v. *Kaplan,* 233 N. Y. 426; *Lee* v. *Van Buren,* 190 App. Div. 742; *Luedeke* v. *N. Y. C. & H. R. R. R. Co.,* 164 App. Div. 104; *Albano* v. *Tapley & Co.,* 234 N. Y. 27.)

McLAUGHLIN, J. This action was brought to recover damages for the death of plaintiffs' testator, alleged to have been caused by defendant's negligence. There have been three trials. On the first the jury disagreed. On the second the complaint was dismissed, but on appeal the judgment of dismissal was reversed and a new trial ordered. The third trial resulted in a verdict for the plaintiffs. The judgment entered thereon was affirmed by the Appellate Division, two of the justices dissenting.

The defendant is a manufacturer of automobiles. One Brown, a mechanical engineer, is its superintendent in charge of the testing department. When an automobile is completed, and before it is offered for sale, it is thoroughly tested by one of his subordinates and after such test has been made, if it turns out to be satisfactory, Brown himself makes an additional test. On Saturday, June 23, 1917, an automobile had been completed, tested and found satisfactory by one of Brown's subordinates. Brown then took the automobile for the purpose of making the additional test. He drove it to his home in Yonkers, then put it in a private garage, and the next morning completed his test by driving the car to different places in that vicinity. He finished testing it, according

1923.]          Opinion, per McLAUGHLIN, J.          [235 N. Y. 226]

to his uncontradicted testimony, about noon. He then drove the car to his home, took his lunch, and immediately thereafter started to drive it to the defendant's factory, located in Long Island City, at the east end of the Queensboro bridge. The direct route to the factory took him down Broadway to One Hundred and Sixty-seventh street, in the city of New York, then down St. Nicholas avenue to One Hundred and Tenth street, then east to and down Fifth avenue to Sixtieth street, then east over the bridge to the factory. One Bedford, at the time in question, occupied, under a lease, several acres (mostly wooded) of land on the northwest end of Manhattan island. There was a building on this land in which Bedford lived, also a garage which he used, and a dock or pier on the Harlem river or Spuyten Duyvil creek, where third parties, with his consent, were accustomed to keep boats. Bedford was a friend of Brown, whom he had previously requested to come to his place and examine an engine in a boat at this pier. When Brown, on his way from his home to defendant's factory, reached Two Hundred and Seventh street, he recalled this request, and for the purpose of complying with it turned west and drove over a dirt or wood road half or three-quarters of a mile to Bedford's garage. As this was occupied, Bedford directed him to stop the car at a place which he pointed out, which was quite level, and where other cars had theretofore many times been left, held only by the emergency brake. Brown put the car at the place indicated, stopped the engine, put on the emergency brakes, which were in good condition, locked the ignition and put the key in his pocket. He then proceeded to the dock, went upon the boat, and worked over the engine for something like half an hour. Having finished this work, he took the boat upon the river for the purpose of testing the engine, all of which took about two hours. While Brown was on the boat, plaintiff's testator and his family, with other picknickers, arrived

in the vicinity of the car. Between where the car was left and the river was a spring of water. The ground at this point is rough and quite steep. The testator went to this spring for the purpose of getting some water and while in the act of doing so, the car plunged down the embankment, struck him, and inflicted injuries from which he subsequently died. The jury found that his death was due solely to the defendant's negligence. A majority of the justices of the Appellate Division has reached the same conclusion.

It seems to me it must be held that this conclusion is erroneous. The plaintiffs did not establish actionable negligence. Brown had a right to place the car where he did. It stood lengthwise on practically level ground and so continued for a distance of from 5 to 10 feet in front of it. The emergency brake being on, and the power turned off, the car would not have started except by the application of external force. This was established by the testimony not only of plaintiffs' witnesses, but by some of the defendant's, all of whom were disinterested, unless possibly Brown. The only evidence that the ground was not level was that it was uneven in places and sloped somewhat sideways from the car towards the river. The place where the car was left was designated by Bedford, the lessee of the property, and where other cars had frequently theretofore been left. With the emergency brake set, the ignition locked, and the key removed, the car, as before said, could not move unless interfered with. That it was left in a safe place, except for such interference, is evident from the fact that it had stood there for upwards of two hours before the accident. During that time several people were about the car and boys were seen in or upon it, and were warned and ordered to keep away from it. Indeed, when it started, two boys were either taken or jumped therefrom.

What more should Brown have done than he did?

He had a right to leave the car unattended and when he turned off the power, applied the emergency brake, locked the ignition and removed the key, I am unable to see what more a reasonable person would or should have done. He was bound to exercise, not the highest degree of care possible, but only such care as a reasonable person would exercise under the same conditions. It is easy enough to suggest, after an accident, what might have been done. He might have removed the wheels. He might have locked the car to a tree with a cable. He might have left it at the place where he turned westerly from Two Hundred and Seventh street. But reasonable care did not suggest any of these things, nor do I think it would be within reason to require them. There was nothing to suggest to him there might be picnickers in that vicinity during his absence, or that mischievous boys would go upon the car, fool with it, and cause it to plunge over the embankment. Had he driven a horse, attached to a buggy, to the same place, securely fastened him with a halter or strap, and someone had interfered with the fastenings, caused the horse to run away and plunge over the embankment and injure the testator, no one, I take it, would think of holding the owner of the horse liable.

The case is much stronger than *Maloney* v. *Kaplan* (233 N. Y. 426). There, a car was left unattended by the driver at the curb on an incline in Seventy-fifth street in the city of New York. It started down grade, ran into a work shanty at the foot of the incline where the deceased was working, and killed him. Not only this, but the operator did not remove the key to the ignition and there was some evidence as to whether or not the engine had been left running. This court held, reversing the judgment, that the trial court erred in not charging the jury that if the chauffeur left the car with the switch turned off, the emergency brake set, the front wheels turned in towards the curb, and went into the

market, and while there some boys started the truck, the defendant was not liable; in other words, that under the facts the jury might have found that the operator of the car had exercised as much care as an ordinarily careful operator would have exercised under the circumstances.

To permit the jury to find defendant negligent, under the facts here stated, and which are substantially uncontradicted, would be to make the owner of an automobile liable beyond reason and common sense.

Several other errors are alleged, which, in view of the conclusion reached, it is unnecessary to pass upon.

The judgments appealed from should, therefore, be reversed and new trial granted, with costs to appellant to abide event.

Hiscock, Ch. J., Hogan, Cardozo, Pound, Crane and Andrews, JJ., concur.

Judgment accordingly.