ARTHUR WAYNE TICE, JR.

*v.*

E. I. DU PONT DE NEMOURS & CO., A CORPORATION

No. 10957

Submitted September 17, 1958. Decided November 25, 1958.

DONLEY, DUCKER, JUDGES, dissenting.

*Howard R. Klostermeyer, Spilman, Thomas, Battle & Klostermeyer, Fred L. Davis, McCluer, Davis, McDougle, Stealey & Morris, Carl E. Geuther,* for plaintiff in error.

*Robert T. Goldenberg, Roger F. Redmond,* for defendant in error.

GIVEN, JUDGE:

Plaintiff, Arthur Wayne Tice, Jr., instituted an action of trespass on the case, in the Circuit Court of Wood

County, against defendant, E. I. du Pont de Nemours & Co., for damages for personal injuries alleged to have resulted from the failure of defendant to furnish "a good, proper, suitable and reasonably safe place" to perform work. Defendant demurred to plaintiff's first amended declaration, contending that plaintiff's alleged cause of action was barred, for the reason that it occurred more than one year prior to the institution of the action, and filed a special plea, based on the same contention. The trial court overruled defendant's demurrer to the amended declaration, and sustained a demurrer of plaintiff to the plea of the statute of limitations. On trial of the general issue, the jury returned a verdict for plaintiff in the amount of ten thousand dollars, and judgment for that amount was entered against defendant.

Defendant, engaged in the construction of a chemical plant, at Circleville, Ohio, entered into a contract with Armstrong Cork Company, whereby Armstrong, an independent contractor, agreed to insulate various pipes constituting part of the plant. Plaintiff, an employee of the independent contractor, not of defendant, was engaged in the insulation of the pipes at the time of the injury, May 7, 1954, in a room described as the caustic soda room. That room was about twenty feet square, with a ceiling approximately thirty feet high. In a corner of that room an interior toilet, in size about seven feet, four inches by three feet, four inches by nine feet high, had been constructed. The walls of the toilet were of brick and the ceiling of transite, an asbestos-cement sheet of material about one-fourth inch in thickness.

To enable the workmen to reach the several pipes to be insulated, the pipes being about five to ten feet below the ceiling of the room and extending through the room, a scaffold about six feet in width was constructed and placed in position in the room. Attached to, as a part of the scaffold, near one end thereof, was a ladder. Defendant, in accordance with the agreement with the independent contractor, constructed the scaffold, but had

no control over the placement thereof, or over the workmen engaged by the independent contractor, though there is some evidence to the effect that engineers of defendant advised the independent contractor as to the manner of the placement of the scaffold. At the time of the accident, the scaffold was so placed that the end thereof to which the ladder was attached, was practically against the side wall of the toilet. The scaffold, however, did not project over the top of the toilet. On the morning of the accident, plaintiff and another employee were directed by the independent contractor to insulate the pipes in the caustic soda room. They commenced work on that day at about 8:00 A.M., and continued to work in that room until the time of the injury, about 3:15 P.M. Immediately before the accident, plaintiff climbed from the top of the scaffold onto one of the pipes to be insulated and, astride the pipe, crawled thereon to a position over the toilet, (a practice sometimes referred to as "cooning"). While there engaged in the insulation of a pipe, he dropped his trowel, which fell to the top of the toilet. Plaintiff then descended from the pipe to the top of the scaffold, down the ladder to the top of the toilet, stepping from the ladder onto the top of the toilet for the purpose of reaching his trowel, when he broke through the covering over the top of the toilet, falling to the floor, causing the injuries complained of.

At the time of the accident, construction of the caustic soda room had not been completed and, apparently, some work was necessary to the completion of the toilet. There appears to be no question that at safety meetings plaintiff and other employees had been warned against the practice of "cooning" pipes, though plaintiff testified that on the day of the accident he requested information as to how to insulate the pipes over the toilet beyond the end of the scaffold, and was instructed by his immediate superior, a foreman of the independent contractor, to "Get it the best way you can". Plaintiff was experienced in the type of work in which he was engaged at the time of his injuries.

We first consider the question relating to the applicable statute of limitations. To be significantly kept in mind are the facts that the action is one for personal injuries, not involving death of the injured or of the wrongdoer; that the cause of action arose in Ohio; and that the law of that State governs the substantive rights of the parties; but that the adjective law of this State, where the action was tried, controls the procedure. *Saena v. Zenith Optical Co.*, 135 W. Va. 795, 65 S. E. 2d 205; 4 M.J., Conflict of Laws, Section 34. A statute of limitations is considered part of the remedy, one of adjective law, so that the applicable statute of the state where trial is had is applied and governs. 4 M.J., Conflict of Laws, Section 39.

Code, 55-2-12, as amended, reads: "Every personal action for which no limitation is otherwise prescribed shall be brought (a) within two years next after the right to bring the same shall have accrued, if it be for a matter of such nature that, in case a party die, it can be brought by or against his representative; and (b) if it be for a matter not of such nature, shall be brought within one year next after the right to bring the same shall have accrued, and not after; and (c) every right of action mentioned above in clause (a) heretofore accrued shall be brought within two years hereafter or within five years from the time such action accrued, whichever shall be less." An amendment, Chapter 2 of the Acts of the 1949 Legislature, reduced from five years to two years the period provided in Clause "(a)", quoted above.

From the language of the statute quoted, and from the decisions hereinafter mentioned, it is clear that had the cause of action here sued on accrued in this State, the period of limitation would be one year. But plaintiff contends that since, under the statute quoted above, the period of limitation is two years if the matter be "of such nature that, in case a party die, it can be brought by or against his representative", and since such action in Ohio is "of such nature", the period of limitation as to the instant case is two years, the matter of the survival

of the cause of action being one of substantive law, governed by the law of the place where the wrong was committed.

The applicable Ohio statute, Section 2305.21 (11235), Baldwin's Ohio Revised Code, reads: "In addition to the causes of action which survive at common law, causes of action for mesne profits, or injuries to the person or property, or for deceit or fraud, also shall survive; and such actions may be brought notwithstanding the death of the person entitled or liable thereto." This statute makes it certain that such a cause of action as that here involved, in Ohio, is "of such nature that, in case a party die, it can be brought by or against his representative". In 1 C.J.S., Abatement and Revival, Section 135, it is pointed out that: "The law of the state wherein a cause of action arose governs its survivability * * *". See *Goldstein* v. *Gilbert,* 125 W. Va. 250, 23 S. E. 2d 606; *Grim* v. *Moore,* 121 W. Va. 299, 3 S. E. 2d 448; *Keesee, Admr.* v. *Atlantic Greyhound Corp.,* 120 W. Va. 201, 197 S. E. 522.

In West Virginia it is held: "1. The common law rule that an action for personal injuries, not resulting in death, does not survive the death of the wrongdoer, prevails in this state, and is not changed by Code, 55-7-5 (Lord Campbell's Act) as amended by Chap. 20, Acts of Legislature 1931. Said amendment relates only to actions for wrongful death." *Byrd, Sheriff, etc.* v. *Lon F. Byrd, Administrator, etc., et al.,* 122 W. Va. 115, 7 S. E. 2d 507. See *Hereford* v. *Meek,* 132 W. Va. 373, 52 S. E. 2d 740. "* * * American statutes authorizing recovery for wrongful death are merely adoptions, or adaptations, of the English 'Lord Campbell's Act', enacted by the British Parliament in 1846. Our statute, like its prototype, clearly created a new right of action and operated for the benefit, not of the decedent's estate, but of his distributees * * *". *Burgess, Admr., etc.* v. *Gilchrist,* 123 W. Va. 727, 729, 17 S. E. 2d 804, 806. See *Woodford* v. *McDaniels,* 73 W. Va. 736, 81 S. E. 544, 52 L.R.A.,

N.S. 1215; *Hoover's Adm'x.* v. *Chesapeake and Ohio Ry. Co.*, 46 W. Va. 268, 271, 33 S. E. 224.

It is contended further, however, that since Code, 55-2-12, as amended, applies only to personal actions, for which no limitation is "otherwise prescribed", the limitation applicable in the instant case, by virtue of such exception, is governed by the one year limitation provided by Code, 55-7-8, as amended. That section reads: "Where an action is brought by a person injured for damages caused by the wrongful act, neglect or default of any person or corporation, and the person injured dies pending the action, the action shall not abate by reason of his death but, his death being suggested, it may be revived in the name of his personal representative, and the declaration and other pleadings shall be amended so as to conform to an action under sections five and six of this article, and the case proceeded with as if the action had been brought under said sections. But in such case there shall be but one recovery for the same injury. And any right of action which may hereafter accrue by reason of any injury done to the person of another, and not resulting in death, by the wrongful act, neglect or default of any person, shall survive the death of the wrongdoer and may be enforced against his executor or administrator, either by reviving against such personal representative a suit which may have been brought against the wrongdoer himself in his lifetime, or by bringing an original suit against his personal representative after his death, whether or not the death of the wrongdoer occurred before the death of the injured party; but any such action shall be instituted within one year from the time such cause of action accrued. Nothing contained in this section shall be·construed to extend the time within which an action for any other tort shall be brought, nor to give the right to assign a claim for a tort not otherwise assignable."

The first, second and fourth sentences of Section 8, just quoted, first became part of the Code of this State

with the adoption of the 1931 Official Code. As such, by clear terms it related only to an action where "the injured person dies pending the action". By an amendment, Chapter 2, 1945 Acts, the third sentence down to the semi-colon therein became a part of the section. This amendment, by its clear terms, related only to such an action as "shall survive the death of the wrongdoer". By a later amendment, Chapter 4, 1949 Acts, the semi-colon mentioned was substituted for a period, and this clause inserted: "but any such action shall be instituted within one year from the time such cause of action accrues". Prior to the 1949 amendment, the section contained no limitation governing the time in which any action might be instituted. It is significant, we think, that the last mentioned amendment does not apply where death of neither party has occurred.

Reliance is had on the holdings in *Hereford* v. *Meek,* 132 W. Va. 373, 52 S. E. 2d 740, and *City of Wheeling ex rel. Carter* v. *American Casualty Co.,* 131 W. Va. 584, 48 S. E. 2d 404. In the *Meek* case the Court was careful to point out that the decision "* * * applies only to an action based upon a right of action which accrues by reason of an injury done to the person of another, when the injury does not cause the death of the injured person and when, after the injury is inflicted, the wrongdoer dies, and which right of action, by virtue of the statute, survives the death of the wrongdoer and may be enforced against his personal representative; and that the holding in these cases is limited to a situation expressly covered by Section 8, as amended, and to an action based upon the right of action dealt with by its provisions. It should not be considered as applicable to or controlling of actions for personal injuries generally when the death of the wrongdoer does not occur or to any other type of personal action which does not clearly come within the express provisions of the statute, as amended by Chapter 2, Acts of the Legislature, 1945 * * *".

In *Jones* v. *Jones,* 133 W. Va. 306, 58 S. E. 2d 857, decided subsequent to the effective date of Chapter 2 of

the 1945 Acts, the Court held: "Where death of a party in interest is not involved a right of action to recover for personal injury is barred under Code, 55-2-12, after the lapse of one year from its accrual." In the opinion the Court stated: "In our opinion, therefore, the use of the word 'survive' in the syllabus in the *Meek* case does not affect the nature of the cause of action under Code, 55-2-12, and consequently does not apply the five year limitation generally to actions for personal injury. That case, correctly viewed, restricts the application of Chapter 2 of the Acts of 1945 to cases where the death of the wrongdoer follows the injury complained of." In the concurring opinion of Judges Fox and Haymond, written by Judge Haymond, it is said: "* * * As expressly stated in the last paragraph but one in the opinion in the *Hereford* cases, no question was there presented with respect to the statute of limitations in an action for personal injury when none of the parties dies within one year after the injury occurred.

"In my opinion the Legislature, in amending Code, 1931, 55-7-8, by the enactment of Chapter 2, Acts of the Legislature, 1945, Regular Session, and in providing for the survival of a right of action against a wrongdoer who subsequently dies, did not intend to change or affect the period of limitations for actions for personal injuries in general or to cause the then existing five year statute of limitations to apply to such cases * * *".

We are of the view, therefore, that the cause of action sued on in the instant case is "of such nature that, in case a party die, it can be brought by or against his representative", within the meaning of Clause "(a)" of Code, 55-2-12, as amended, for the reason, and only for the reason, that the substantive question of survival is governed by the law of the State where the action arose. The conclusion reached is in accord with an excellent opinion dealing with the same problem, by Judge Watkins, in *McIntosh* v. *General Chemical Defense Corporation,* 67 Fed. Supp. 63, (D.C. S.D. W. Va.).

Does the evidence establish negligence on the part of defendant in failing to furnish plaintiff a safe place to work? Pertinent provisions of the Ohio Revised Code, Sections 4101.11 and 4101.12, read: "Every employer shall furnish employment which is safe for the employees engaged therein, shall furnish a place of employment which shall be safe for the employees therein and for frequenters thereof, shall furnish and use safety devices and safeguards, shall adopt and use methods and processes, follow and obey orders, and prescribe hours of labor reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters."

"No employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe, and no such employer shall fail to furnish, provide, and use safety devices and safeguards, or fail to obey and follow orders or to adopt and use methods and processes reasonably adequate to render such employment and place of employment safe. No employer shall fail to do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees or frequenters. No such employer or other person shall construct, occupy, or maintain any place of employment that is not safe."

The statutory provision has been interpreted as exacting a duty substantially the same as that imposed by Ohio law on an employer toward an invitee. *Schwarz* v. *General Electric Realty Corp.*, 99 Ohio App. 191, 132 N. E. 2d 133, affirmed 163 Ohio St. 354, 126 N. E. 2d 906; *Pare* v. *Gemco Engineering and Mfg. Co.*, 95 Ohio App. 141, 118 N. E. 2d 206; *Bosjnak* v. *Superior Sheet Steel Co.*, 145 Ohio St. 538, 62 N. E. 2d 305; *Davis* v. *Charles Shutrump & Sons Co.*, 140 Ohio St. 89, 42 N. E. 2d 663; *Hozian* v. *Crucible Steel Casting Co.*, 132 Ohio St. 453, 9 N. E. 2d 143; *Kelly* v. *Ford Motor Co.*, 104 Ohio App. 185, 139 N. E. 249; *Ford Motor Co.* v *Tomlinson*, 229 F.

2d 873, certiorari denied 352 U. S. 826, 77 S. Ct. 38, 1 L. ed. 2d 49.

In *Davis* v. *Charles Shutrump & Sons Co.*, *supra,* the first point of the syllabus reads: "Where the premises on which construction work is to be performed by contractor remain under the control of the principal employer while work is in the course of performance, a servant of the contractor is an 'invitee' and as such is entitled to recover from the principal employer for any injury he may sustain by reason of the abnormally dangerous condition of the premises, only if principal employer has and the servant has not actual or constructive knowledge of the existence of such condition."

In *Pare* v. *Gemco Engineering & Mfg. Co.*, *supra,* the Court quoted with approval from *Popowich* v. *American Steel & Wire Co.*, 13 F. 2d 381 (6th Cir.), as follows: "Employee of independent contractor, receiving injuries while washing windows for defendant at place where no employee of defendant was required to work, *held* not entitled to recover, under Gen. Code Ohio, §§ 871-15, 871-16, requiring safe place of employment for employees and frequenters, since 'place of employment,' as used therein, means place where some employee is required to work, either temporarily or permanently."

In *Wellman* v. *East Ohio Gas Co.*, 160 Ohio St. 103, 113 N. E. 2d 629, the Court held, Points 1 and 2, syllabus: "1. Where an independent contractor undertakes to do work for another in the very doing of which there are elements of real or potential danger and one of such contractor's employees is injured as an incident to the performance of the work, no liability for such injury ordinarily attaches to the one who engaged the services of the independent contractor. 2. One who engages an independent contractor to do work for him ordinarily owes no duty of protection to the employees of such contractor, in connection with the execution of the work, who proceeds therewith knowing and appreciating that there is a condition of danger surrounding its performance."

In *Ford Motor Company* v. *Tomlinson, supra,* the plaintiff, a painter and employee of an independent contractor, was injured through the negligence of an employee of a different independent contractor, both independent contractors having been engaged by Ford. Plaintiff contended that Ford, having reserved control and direction over the two independent contractors, and by ordering them to work in the same general area at the same time, the painting contractor above the contractor engaged in installing the floor of a particular room, was negligent in not providing a safe place for plaintiff to perform the work assigned to him. The Circuit Court of Appeals, Sixth Circuit, remanded the case with directions to enter judgment for defendant. It held, in effect, that as to the injuries sustained by the employee of the independent painting contractor, when platform on which he was working was knocked down by an employee of another independent contractor, engaged in laying the floor being constructed for the defendant, who exercised no control over the work of the independent contractors, liability could not be imposed on the defendant under the Ohio safe place statute, since defendant was not an insurer and was under no duty to foresee that the employees of the floor laying contractor would be negligent. See *Pare* v. *Gemco Engineering & Mfg. Co., supra; Bosjnak* v. *Superior Sheet Metal Co., supra; Wellman* v. *East Ohio Gas Co., supra; Hetrick* v. *Marion-Reserve Power Co.,* 141 Ohio St. 347, 48 N. E. 2d 103.

In the case last cited, the Court held: "3. Such company is not liable to one injured as the result of some unusual occurrence that cannot fairly be anticipated or foreseen and is not within the range of reasonable probability."

In reaching the question whether defendant was negligent in failing to furnish the plaintiff a safe place to work, we may assume, but do not decide, that plaintiff was free from negligence. The cases cited, we think, make it clear that a defendant, in such a case, is not

liable in damages for an injury resulting to an employee of an independent contractor at a place where the employee was not required or supposed to perform work assigned to him. It appears to be clearly established, in the instant case, that plaintiff, at the time of his injury, left the scaffold provided for his convenience and safety and ventured onto the covering over the toilet, a place where he had no work to perform, and was not, at the time, actually performing work assigned to him. Had he remained on the scaffold and not "cooned" the pipe being insulated, as the owner-defendant had the right to expect him to do, the injury would not have occurred. True, his immediate foreman may have instructed him, in effect, to leave the scaffold and insulate pipes by "cooning" them, but we find no authority justifying recovery in such a case against the owner merely because an independent contractor instructed its own employee, over whom the owner had no authority, to place himself in a position of danger, at a place where he was not supposed to be, a place where he could not have performed any duty, or in a place not necessary or intended to be used in connection with his work.

In considering liability of the owner-defendant, it must not be overlooked that no contention is made that there existed any defect in the construction of the scaffold or the cover over the toilet, all evidence as to such matters being to the effect that they were constructed, and of such materials, as usual in such circumstances. While considerable argument is made relating to whether the transite ceiling was attached to the underside of the ceiling joists, it definitely appears from the evidence of those who installed the ceiling, and those who repaired it after plaintiff fell, that it was attached to the underside of the joists; that that was the usual and approved manner of such construction; and that the covering over the toilet was never intended to be walked on. Plaintiff testified that he "found out later it had transite on the bottom * * *". True, he testified further that a sheet of transite was also on top of the joists, but there is no

evidence as to who placed it there. Those who installed the ceiling for defendant deny having done so. To hold a defendant liable, in the circumstances of such a case, would, in clear effect, make him an insurer against injuries of an employee merely because the injury occurred on premises owned or controlled by defendant. The injury, we think, was clearly an "unusual occurrence" that could not have been fairly "anticipated or foreseen and is not within the range of reasonable probability", within the meaning of the holding in *Hetrick* v. *Marion-Reserve Power Co.*, 141 Ohio St. 347, 48 N. E. 2d 103. It cannot reasonably be contended that the defendant should have anticipated that an employee would "coon" the pipe to be insulated, drop his trowel, and, to recover it attempt to walk over the covering of the toilet. We are, therefore, of the opinion that defendant violated no duty owed plaintiff in failing to furnish him a safe place to perform work.

The judgment of the Circuit Court of Wood County complained of is reversed, the verdict of the jury is set aside and a new trial awarded.

> *Reversed;*
> *verdict set aside;*
> *new trial awarded.*

DONLEY, JUDGE, dissenting:

I agree with the majority decision in holding that the defendant is not liable. I dissent from that part of the decision which holds that the applicable statute of limitations is two years.

If A commits a personal injury tort against B in West Virginia and neither party dies, B must sue A within one year from the date when the injury occurred. *Jones* v. *Jones*, 133 W. Va. 306, 58 S. E. 2d 857. The majority holds that if A commits the same kind of a tort against B, in the State of Ohio, then B may sue A in West Virginia within two years from the date when the injury occurred. This result is independent of the domicile of

the parties and would presumably be reached if both A and B were domiciled in West Virginia even though the tort was committed in Ohio. I think that no satisfactory answer can be made to the question why B should be permitted to have twice as long to assert his cause of action if it arose in Ohio rather than in West Virginia. Statutes of limitation express the public policy of the State. It is elementary that if an action is barred by the statute of limitations of the forum, no action can be maintained even though the action is not barred in the state where the cause of action arose. Restatement, Conflict of Laws, Sec. 603, wherein it is said that the "policy of a statute of limitations is to confine actions in the local courts to a period within which it is believed substantial justice between the parties can be administered." In brief, therefore, I think it is the public policy of this State, as expressed in the statute of limitations, that a cause of action based upon personal injury when the injured party and the tortfeasor are both living, must be asserted by the institution of an action within one year from the occurrence of the wrong. The decision of the majority results in a violation of that policy.

It is sought to justify that departure by resort to Code, 55-2-12, as amended, which provides, in so far as applicable here, that:

> "Every personal action for which no limitation is otherwise prescribed shall be brought (a) within two years next after the right to bring the same shall have accrued, if it be for a matter of such nature that, in case a party die, it can be brought by or against his representative; and (b) if it be for a matter not of such nature, shall be brought within one year next after the right to bring the same shall have accrued, and not after. . . ."

I do not think that the provisions of clause (a) have any application to a case such as the one now before us, where neither party has died and there is no possibility that an action can be brought by or against a personal

representative of either party. No precedent in this jurisdiction so holds. The statute is of the character "sometimes and properly termed a residuary clause or section or catch-all provision." 53 C.J.S., Limitation of Actions, Sec. 103, p. 1076. The cases relied upon by the majority involve factual situations in which either the injured party or the tortfeasor died. In *City of Wheeling* v. *American Casualty Co.*, 131 W. Va. 584, 48 S. E. 2d 404, it was held that where an action is begun by the injured party who, while the action is pending, dies from a cause other than the injury, it may be revived by his personal representative and prosecuted to judgment against the living tortfeasor. In *Hereford* v. *Meek*, 132 W. Va. 373, 52 S. E. 2d 740, it was held that where the action is begun by the injured party and while the action is pending the tortfeasor dies, it may be revived and prosecuted to judgment against the personal representative of the tortfeasor. It was further held that the statute of limitations was five years, as the statute then existed. Code, 55-7-8, construed in connection with Code, 55-2-12. The *Hereford* case was decided on March 1, 1949. The Legislature moved promptly in an effort to overcome the effect of that decision. Chapter 4 of the Acts of the Legislature, 1949, Regular Session, was passed March 12, 1949, and became effective from that date. It was entitled "AN ACT to amend and reenact section eight, article seven, chapter fifty-five of the Code of West Virginia, one thousand nine hundred thirty-one, as amended, relating to the termination or abatement of action for injury upon the death of either party, to survival of action for personal injury against wrongdoer and *providing the limitation of time within which such actions shall be brought against the personal representative of such wrongdoer.*" (Italics supplied). This Act simply repeated the provisions of the prior Acts of 1945, Regular Session, Chapter 2, and added the clause, "but any such action shall be instituted within one year from the time such cause of action accrued." I am of the opinion that the words "any such action" refer solely to actions brought against the personal representative of

the wrongdoer, as expressed in the Title of the Act, above quoted and, in part, italicized.

It cannot be successfully denied that this statute is a survival statute in so far as the preservation of liability is concerned. It is expressly provided that "the right of action. . . . shall survive the death of the wrongdoer." Does the right of action survive the death of the injured party? The statute so provides in the event that the injured party has begun the action during his lifetime. But if the injured party dies before he has begun an action, no provision is expressly made which permits his personal representative to initiate an action against the wrongdoer or his representative. In *City of Wheeling* v. *American Casualty Co.*, 131 W. Va. 584, 592, 48 S. E. 2d 404, 409, Judge Haymond stated by way of *dictum* that "numerous cases hold, however, that a statute which in terms prevents abatement and provides for the revival of pending actions, does not operate as a revival statute if no action is pending at the time of the death of the injured party. 1 Am. Jur., Abatement and Revival, Section 79. That situation, however, does not arise in this case." The same authority, in a later paragraph of Section 79, states that "Other courts, however, view a statute which in terms prevents the abatement and provides for the revival of pending actions as causing the cause of action on which such actions are based to survive." See Annotation, 92 A.L.R. 956. There is authority for the proposition that any action which survives against the personal representative of one party must be considered as surviving in favor of the personal representative of the other party. *Valentine* v. *Norton*, 30 Me. 194; cf. *Brill* v. *Jewett*, 262 F. 935, and *Hurley* v. *Sheehan*, 288 Mass. 468, 193 N.E. 46, 96 A.L.R. 534. It is, therefore, possible for us to hold, if the point is raised at some future time, that the right of action survives the death of the injured party even though no action was begun during his lifetime.

The majority, however, hold that these considerations are irrelevant for the reason that under the statute of

Ohio the cause of action survives "and such actions may be brought notwithstanding the death of the person entitled or liable thereto." As I have pointed out, Code, 55-7-8, as amended, likewise makes the cause of action survive against the wrongdoer, so that we gain nothing by saying that the laws of the two states in this respect are substantially identical. But the amendment of Code, 55-7-8, by Acts of 1949, Chapter 4, expressly provides that "any such action shall be instituted within one year from the time such cause of action accrued." Thus, construing this provision in connection with Code, 55-2-12, previously quoted, it is apparent that this particular type of action does not fall within the provisions of subsection (a) thereof (within two years) for the reason that the section is qualified and limited in its application to personal actions "for which no limitation is otherwise prescribed." In other words, since in West Virginia the survivable cause of action against the deceased wrongdoer must be brought within one year, it is illogical to hold that an identical cause of action arising in Ohio may be brought within two years. As indicated in the beginning of this opinion, the Legislature quickly and emphatically expressed the public policy of this State with reference to a time limitation in a case of this character. In my judgment, we ignore and nullify that policy if we permit, by an unwarranted interpretation of Code, 55-2-12, as amended, an identical cause of action to be maintained because—so far as I understand the majority—and only because, the operative facts giving rise to such liability arose in another state. The only pertinency of that event is to establish that under Ohio law a cause of action survives the death of the tortfeasor. When, therefore, it is apparent that our statute establishes an identical rule of substantive law, the sole remaining question is, what is our public policy in relation to the time when such substantive right must be asserted by an action? When we then observe that by amendment to the statute the time limit fixed for the assertion of the substantive right so created is one year, I am unable to understand how it can be said to be two

years by means of construing a "catch-all" statute which itself excepts from its operation cases for which limitations are "otherwise prescribed."

As previously stated, I think that the provisions of Code, 55-2-12, subsection (a) relating to cases where an action may be brought by or against a personal representative have no proper application to actions for personal injuries when both the injured party and the tortfeasor are living. But even if I am in error in this conclusion, it is my opinion that cases of this character fall within the category of those which are "otherwise prescribed" and thus are excluded from the operation of subsection (a).

From the very beginning it had been the consistent public policy of this State that all actions for personal injuries died with the person of either the injured party or the tortfeasor and that no action could be maintained either by or against the personal representative. Aside from Lord Campbell's Act and the amendment thereof by Code, 55-7-8, this continued to be the law until the enactment of Chapter 2, Acts of the Legislature of 1945, Regular Session. However, since that Act provided no period of limitation, when this Court was confronted with the problem in *Hereford* v. *Meek,* 132 W. Va. 373, 52 S. E. 2d 740, it was driven to hold that the then existing five-year limitation contained in Code, 55-2-12, subsection (a) necessarily applied because there was no other provision covering the subject. And, said the Court, ". . . the Legislature indicated its intention that the period of one year provided by Code, 1931, 55-2-12, for a personal action which did not survive the death of the person *to whom it had accrued* should continue to govern an action for 'any other tort' . . ." (Italics supplied.)

The present state of the law is, therefore, (1) if the injured party and the tortfeasor are both living, the statute of limitations is one year; (2) if the tortfeasor dies, the living injured party must sue the personal representative within one year from the time when the

cause of action accrued; (3) if the injured party institutes action within one year and thereafter dies, no period of limitation is provided by said statute within which his personal representative is required to revive the action against the tortfeasor or, if the latter is also deceased, against his personal representative; and (4) if the injured party dies without having instituted an action against either the tortfeasor or his personal representative, the cause of action is extinguished, and no question concerning the statute of limitations arises.

The Legislature zealously preserved the *liability* of the tortfeasor, but inexplicably failed to preserve the *right of action* to enforce it if the injured party failed to bring an action. But if the injured party did bring an action within one year, and thereafter died such action could be revived. Thus, it is apparent that the provision is a *revival* statute as to the injured party and a *survival* statute as to the tortfeasor. The reason for the failure of the Legislature to abolish *in toto* the common law rule of non-survivability is not apparent. Nevertheless, the statute as now written leaves no doubt that such failure indicates, and at least tacitly expresses, the public policy of the State that personal actions shall not survive the death of the injured party if he dies within one year from the accrual of the cause of action without having instituted an action thereon.

The provisions of Code, 55-2-12, subsection (a) which prescribe a limitation (now two years) for "a matter of such nature that, in case a party die, it can be brought by or against his representative," were never intended to apply to cases involving personal injuries for the quite obvious reason that this statute was in existence for many years before the passage of Acts of the Legislature of 1945, Chapter 2, which, for the first time, made any change in the common law doctrine. As I have said, the Court felt bound to resort to subsection (a) in the *Hereford* case, and when, within twelve days after that decision the Legislature amended said Act by limiting the right to bring an action against the wrongdoer or

his personal representative to one year after the accrual of the cause of action, the Legislature clearly again enunciated the public policy of the State to restrict to one year the time within which actions for personal injuries shall be brought, whether non-survivable at common law or survivable by virtue of the substantive provisions of the statute. It is significant also that Code, 55-2-12, was amended by Acts of the Legislature of 1949, Regular Session, Chapter 2, by reducing the time limit from five years to two years and that this Act was passed on March 7, 1949, (effective ninety days later) or five days before the passage of Chapter 4 of the same Acts, on March 12, 1949, which amended Code, 55-7-8, by imposing a limitation of one year for the institution of personal injury actions against a wrongdoer or his representative. The passage of the two Acts relating to the same subject matter, *i.e.*, limitation of actions, almost simultaneously, clearly demonstrates that it was not the intention that personal injury actions, whether survivable or not, should be governed as to limitation of time by the provisions of Code, 55-2-12, subsection (a), as amended.

The public policy of the State thus to impose a statute of limitations of one year as applied to actions for personal injuries is, therefore, in my judgment, clearly announced. We flout that policy by permitting the plaintiff in this case to maintain such an action against this corporate defendant upon the theory that since the cause of action arose in Ohio and is survivable under its statutes, it is the type of case which is governed, as to limitation of time, by Code, 55-2-12, as amended.

No principle of law, other than that of comity, requires us to recognize substantive rights arising under the laws of Ohio or to employ the judicial machinery of this State for their enforcement. And, I think, we should not do so in violation of the demonstrated policy of our State. "All statutes of limitation are time clocks; [they are] a legislative declaration of policy . . .", *Tieffenbrun* v. *Flannery*, 198 N.C. 397, 151 S. E. 857. See: 3 Beale,

The Conflict of Laws, Section 605.1. "No action can be maintained upon a cause of action created in another state, the enforcement of which is contrary to the strong public policy of the forum." Restatement, Conflict of Laws, Section 612. This principle was approved in *Poling* v. *Poling,* 116 W. Va. 187, 179 S. E. 604, wherein the Court said that, "It is likewise a general proposition that courts of other jurisdictions will give effect to rights which are created or recognized by the *lex loci,* but there is an exception which is as fundamental as the rule itself, and that is, that the *lex loci* must give way when it comes in conflict with the law or public policy of *lex fori.*" In accord with this principle is *Campen Bros.* v. *Stewart,* 106 W. Va. 247, 145 S. E. 381, in which the Court refused to enforce the collection of attorney's fees in a proceeding upon a promissory note. These principles were not considered in *McIntosh* v. *General Chemical Defense Corporation,* 67 F. Supp. 63, which concededly supports the majority view. With all deference to the opinion of the learned Judge Watkins in that case, I cannot agree with the analysis there made. I concur in the view that the survivability of a cause of action is determined by the law of the state where it arose, but I do not think that principle solves the problem. It is not enough to say that because a *literal* interpretation of the language of Code, 55-2-12, as amended, seems to bring within its operation all causes of action which survive, (and not otherwise provided for) there is an end to the inquiry. When we recognize that this statute was enacted many years before the survivability of personal injury claims was created, and for that reason could not possibly have been intended to apply to them, we should abandon a literal interpretation of the statute and should construe and apply it in the light of its evident purpose and of its historical background and development.

For these reasons, I dissent from the conclusion reached by the majority of the members of this Court. This case should be an illustration of the confused, uncertain and unsatisfactory state of our laws relating to

statutes of limitation sufficient to impel the Legislature to make an early and comprehensive revision of them.

Judge Ducker concurs in this dissent.