Tom KEMP; Truman Nisbet, Leslie Boomgarten, Kevin Fitzmaurice, Plaintiffs,

v.

FROZEN FOOD EXPRESS, INC.; Frozen Food Transportation Services, Inc; Frozen Food Express Industries; and Conwell Corporation, Defendants.

Nos. TX–85–27–CA, TX–85–28–CA, TX–85–29–CA and TX–85–70–CA.

United States District Court, E.D. Texas, Texarkana Division.

Oct. 1, 1985.

Nicholas H. Patton of Young, Patton, & Folsom, Texarkana, Ark., for plaintiffs.

Victor Hlavinka of Atchley, Russell, Waldrop, & Hlavinka, Texarkana, Tex., for defendants.

## MEMORANDUM OPINION

HALL, District Judge.

Jurisdiction to hear this case is found in 28 U.S.C. § 1332, and was not disputed by the parties.

The sole issue in this trial is a question of law that is related to the municipal law of the State of Texas, viz, were or were not Tom Kemp, Truman Nisbet, Leslie Boomgarten, and Kevin Fitzmaurice employees of Frozen Food Express (hereinafter called FFE) for purposes of Texas Workman's Compensation Law? Four causes of action were consolidated for this purpose. At the commencement of trial the parties' counsel agreed that Plaintiff Tom Kemp was an employee of Conwell, Inc., a wholly owned subsidiary of the Defendant, FFE. The Court accepts their determination and finds Tom Kemp was an employee of the FFE corporate family.

The following facts are undisputed:

(1) That the claimants operated equipment for the benefit of FFE.

(2) That the vehicles displayed the FFE yellow and green decals, and operated under the FFE Interstate Commerce Commission permit. It was also shown that ICC permit number was displayed on the cab door of the tractors.

(3) That there was no relevant difference between the contracts signed by Plaintiffs Nisbet and Boomgarten. Plaintiff Fitzmaurice had not signed a contract with

FFE. He was, rather, operating as a "subcontractor" driver for Boomgarten.

(4) That while the Plaintiffs were associated with FFE they were issued FFE corporate identification cards.

(5) That in the years prior to 1981, FFE had carried workman's compensation insurance on its drivers. Further, that FFE carried this insurance regardless of whether or not the drivers were regular employees or categorized as "Independent Contractors".

(6) That in 1981 FFE cancelled its workman's compensation insurance for all persons associated with FFE, both regular employees and "independent contractors".

(7) That there was no distinguishable difference in the duties or conditions of employment between the drivers that were employees of Conwell, Inc., and those who were classified as "independent contractors".

(8) That during the pendency of the lease-term FFE had the exclusive right to use, possession and control of the vehicles. These facts are important as the question of law regarding the Plaintiffs' status is highly fact specific.

Plaintiff Nisbet testified that while enroute drivers were required to apprise the FFE dispatcher of their location. Further, that they obtained their outgoing and return schedules from the FFE dispatcher. Nesbit went on to say that during the pendency of the delivery, the drivers were the sole corporate representatives to the various customers. He continued his testimony by saying that when new drivers were hired by an "Independent Contractor", FFE had a right of refusal. This testimony was corroborated by a defense witness, John Prickett, an FFE corporate officer.

There was further testimony that if an "Independent Contractor" was unable to obtain, on his own, drivers who were acceptable to FFE (those who passed a corporate-directed physical, background investigation, and polygraph), then FFE would itself furnish suitable drivers. Again, defense witness Prickett substantiated this portion of Plaintiff Nesbit's testimony.

Plaintiff Fitzmaurice testified that he filled out an FFE application form, took a physical examination administered by an FFE physician, and took and FFE administered polygraph examination. Fitzmaurice, a subcontractor for Plaintiff Boomgarten, testified that he received his instructions not from Boomgarten, but from FFE. He also testified that he received some partial repayment for medical expenses, and some other checks styled "compensation" from FFE after his injury. He went on to say that the payments later stopped without notification.

Drivers supervised the count of the merchandise at the loading and unloading of the trailer, and were personally liable for shortages, according to Plaintiff Nesbit.

Plaintiff Nesbit testified that he did not receive any direct notification from FFE that he, or other independent contractors, would have their workman's compensation insurance dropped. Rather, he continued, it was "something I heard on the grapevine". The defense offered no evidence to counter this testimony. Alvin Dryer, an FFE officer called by the Plaintiff as an adverse witness, testified that prior to 1981, FFE had represented drivers similarly situated as the Plaintiffs as employees.

Plaintiff's Exhibit #2 was a file maintained by FFE regarding Plaintiff Nesbit's injury. The style of the report was "Employer's Report of Injury". Mr. Dryer authenticated the report, and acknowledged that FFE had paid voluntary benefits to Nesbit, and that FFE had written on the checks the word "compensation". A check, dated May 16, 1983, authenticated by Dryer, labeled Plaintiff Nesbit as an "employee". Plaintiff's Exhibit #7, also authenticated by Dryer, was a check to Plaintiff Fitzmaurice, dated May 6, 1983. That check labeled Fitzmaurice as an "employee" as well.

Both Plaintiff Nesbit and Plaintiff Boomgarten said that they were directed in what sequence to load and unload the merchan-

dise carried in the trailers. Mr. W.D. Goodwin, a defense witness, testified on cross-examination that FFE required the independent contractors to have "relief" drivers on long hauls. He also testified that drivers were required to contact FFE before returning and that drivers were instructed as to what form of payment would be accepted.

Defense witness Prickett testified that FFE leases roughly 450 tractors from various owners. Some owners merely leased one truck, others like Plaintiff Boomgarten might lease multiple units to FFE. During a trip, defense witness Goodwin said that drivers were to call the FFE dispatcher. If a driver was, for instance, enroute to Albuquerque, New Mexico, the evidence produced at trial showed it was possible for him to be detailed to Denver, Colorado, instead; from the testimony of W.D. Goodwin. Goodwin went on to testify that if a driver did not comply with the Company directive, the lease was automatically terminated. Goodwin also testified that FFE had the right to refuse a driver permission to obtain a backhaul, even if no FFE load was available. The driver would then be forced to "deadhead" on the return trip.

The Court's sole task is to determine if the Plaintiffs were *employees* of Frozen Food Express for purposes of Texas Workman's Compensation Law. "Employee", for the purposes of workman's compensation law, is defined by statute in Article 8309, Section One, Tex.Rev.Civ.Stat.Ann. Article 8307, Section Six, defines an employee of a subcontractor and his relation to the general contractor. That provision is relevant in the case of Plaintiff Fitzmaurice. See Article 8307, Section 6, Tex.Rev. Civ.Stat.Ann. The law is clear that the test to determine a claimant's status is who had the RIGHT (not necessarily exercised) of control over the activities of the worker.

It is the nature of a true independent contractor to hire and fire his own employees. See *Continental Insurance v. Wolford*, 515 S.W.2d 364 (Tex.Civ.App.-Hous-

ton, 1974) reversed on other grounds; and *Texas Employers Insurance Association v. Bewley*, 560 S.W.2d 147 (Tex.Civ.App.-Houston, 1977). Sporadic control does not destroy the independent contractor status, and, of course, the general contractor has a right to insure compliance with the general specifications of the master plan. *Bewley*, supra, at 150; *Newspapers, Inc. v. Love*, 380 S.W.2d 582 (Tex.1964). But it is important to remember that the independent contractor remains in major part his own master, and the master of his employees.

In Texas, the "distinguishing feature between employees and independent contractors .... depends on whether or not the employer had the RIGHT to control the details of the work." *Newspapers, Inc. v. Love*, supra, at 598 (emphasis added). There, the Court went on to say that sporadic acts of control will not destroy the independent contractor status. Ibid at 598. But the right of control is superior to any exercise, or non-exercise, of control. *Dickerson v. I.N.A. of Texas*, 640 S.W.2d 81 (Tex.App.1982). While the courts will look to any express contract, the Court need not merely be concerned with form over substance. *Humphreys v. Texas Power and Light*, 427 S.W.2d 324 (Tex.Civ.App.-Houston, 1968) Writ Ref'd NRE. If the evidence shows the true relationship between the parties was that of an employer/employee rather than an employer/independent contractor and that contract was designed to cloak that relationship, then the contract classification can be disregarded. Ibid. Further, the Court can determine the status of the claimant circumstantially. *Texas Employers Insurance Association v. Bewley*, supra, at 149.

It is important to remember that the record indicates that FFE had a right of refusal over which "subcontractors" the "independent contractors" selected to operate their equipment. The defense attempted to counter this point by saying that any general contractor can hire or fire any independent contractor he so chooses. While in

and of itself correct, that argument misstates or misunderstands the question before the Court, confusing ownership of the tractors with claimant's status.

The owners of the tractors leased the trucks to FFE. The act of leasing the truck to FFE DOES NOT make the owner of the truck an employee of FFE for any purpose. It is legal serendipity that the owner of the truck was, in most instances, also the driver of the truck. The lease is severable from the question of a claimant's status.

By having the *right* of refusal over prospective subcontractors; by having the *right* to refuse permission for a backhaul; by having the *right* to detour a driver enroute; by having the *right* to control a driver's activities; by directing the drivers to pick up payment for C.O.D. orders; by issuing ID cards; by placing the drivers in the position of being the sole corporate representative during the delivery; by assigning drivers to operate under its ICC permit, *inter alia*, Frozen Food Express had enough *right* of control to make the drivers employees under Texas law for worker's compensation purposes. As a matter of law, the Court holds that Truman Nisbet and Leslie Boomgarten were employees of Frozen Food Express for workman's compensation purposes. Under the authority and intent of Article 8307, Section Six, Tex.Rev.Civ.Stat.Ann., the Court holds that Kevin Fitzmaurice was an employee of Frozen Food Express, again for workman's compensation purposes.